STATE of Missouri, Respondent,

v.

Rodney A. HAWKINS, Appellant.

No. SD 29928.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 30, 2010.

---

800

Nancy R. Price, of Springfield, MO, for Appellant.

Chris Koster, Attorney General, and Daniel N. McPherson, Assistant Attorney General, of Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

A jury convicted Rodney A. Hawkins ("Appellant") of sodomy in violation of section 566.060, RSMo Cum.Supp.1992.[1] Appellant was sentenced to fifteen years' im-

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

prisonment. This appeal followed. We affirm the trial court's judgment.

### Factual and Procedural History

On appeal, we review the evidence in the light most favorable to the verdict. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). Employing this standard, the following was adduced at trial.

Appellant's daughter ("Victim") was born in 1979. When Victim was seven or eight years old, Appellant took her into his bedroom, removed her pants and underwear, and inserted his finger into her vagina. Appellant then warned Victim not to tell anyone saying no one would believe her, and it was her fault. Victim told no one because she was scared and did not think anyone would believe her. Appellant continued to molest her in his bedroom. When Victim was nine or ten years old, she moved into her own bedroom. Subsequently, Appellant began molesting her in her bedroom and the frequency of this abuse increased. She still did not tell anyone because she was scared, humiliated, and did not think anyone would believe her.

When Victim was eleven or twelve years old, her younger sister began sharing her bedroom, and the sexual abuse temporarily stopped. The abuse resumed when Victim was twelve years old and in the seventh grade. Appellant stopped sexually abusing Victim when she was thirteen or fourteen years old and in the eighth grade. Victim again did not tell anyone because she was scared, humiliated, and it made her feel dirty. Each incident of abuse involved Appellant inserting his fingers into her vagina.

When Victim was seventeen years old, she was admitted for thirty days to Lakeland Regional Hospital ("Lakeland"), a drug rehabilitation and mental health facility. When a Lakeland counselor asked if she had been sexually abused she answered, "No."

When Victim was twenty-six years old, her younger sister disclosed to Victim that Appellant had "done something to her." Victim accompanied her sister to a child advocacy center ("CAC"). After her sister had been interviewed, a police officer asked Victim if she believed her sister's story. Victim told the officer she did believe her sister because the same thing had happened to her. Victim then told the officer more details about how Appellant had abused her.

Appellant's counsel subpoenaed Victim's Lakeland medical records (the "records"). After an *in camera* review, the trial court determined that two statements from the records were relevant and allowed disclosure of that portion of the records containing those statements. The two disclosed records documented Victim's denial of any prior physical or sexual abuse. The trial court ruled the defense could cross-examine Victim about the two statements she had made at Lakeland. The trial court denied the request of Appellant's counsel to personally review the records to determine if they contained any additional information he could utilize at trial.

The State filed a "Trial Brief/Motion in Limine" in which it disclosed its intent to elicit information from Victim regarding her initial disclosure to authorities. The trial court ruled the prosecutor could inquire as to how Victim happened to disclose the abuse. The trial court ruled Victim could testify that: (1) she was with another child during an interview at the CAC, (2) she was asked whether she believed the child, and (3) her response was she did believe the child because it had happened to her. The trial court prohibited testimony that the child was a family

member or had been placed in the protective custody of Victim.

Victim was the State's sole witness at trial. She testified Appellant sexually abused her repeatedly when she was younger, as described above. The prosecutor sought and received permission to lead Victim regarding her disclosure to the police officer so her testimony would stay within the boundaries set by the trial court's ruling. Defense counsel objected to the entire line of questioning on the grounds of "bolstering and ... prior bad acts evidence." The trial court overruled the objection and granted defense counsel a continuing objection.

Victim testified she was at the CAC with a teenage girl who had made allegations about being molested. The prosecutor proceeded to question Victim about her disclosure:

Q. Were you there with a teenage girl that had made allegations about being molested?

A. Yes.

Q. And was it your understanding that there was an investigation going on?

A. Yes.

Q. And in the course of that was this girl interviewed?

A. Yes.

Q. And at the close of that interview did Officer Jones ask you about whether you believed her or not?

A. Yes.

Q. And how did you respond to that?

A. I told him I did believe her because the same thing had happened to me.

Q. And how did you react emotionally when he asked you that?

A. I broke down and cried.

Q. Were you expecting or planning on talking to an officer about what had happened to you when you went to that child advocacy center that day?

A. No.

Victim testified she did not tell anyone about being molested by Appellant because she was scared of Appellant, she was humiliated, she did not want people to know about it, and it made her feel dirty.

She also testified she was sent to Lakeland after being arrested for "minor in possession [of alcohol]," Appellant bailed her out, and then he beat her up after they got home. She explained Appellant had hit her when she was little and that was part of the reason she was scared of him. The prosecutor asked Victim why she had denied being abused when asked at Lakeland:

Q. Why when you were ask [sic] if you had been sexually abused by the counselor, why did you tell that person no?

A. Well, after I got arrested, and I went home I got beat up. I went in to school the next day and I told them what had happened. And then they sent me home and I had missed the bus that day so I met up with a friend and that's when I ran away. When they asked that, I was scared, again, embarrassed, still very humiliated. I didn't want people to know about it, and I still thought it was my fault.

Q. What did you think would happen if you told the counselor that it had happened?

A. Either they would keep me there or send me home and I would get beat up again.

On cross-examination, Victim testified she knew Lakeland was a secure facility. Victim admitted the staff at Lakeland, including her doctor—Dr. David Tro-

baugh—asked her if she had been sexually abused:

Q. And you were asked, Have you been sexually abused, right?

A. Yes.

Q. And you were asked, Is your father sexually abusing you?

A. I don't remember if they put it that way.

Q. And however it was put to you, you looked them dead in the eye and said no?

A. I did tell them no.

Q. Okay. Now, Dr. Trobaugh–And then with the social worker Rutan she also wanted to know about you and interviewed you, right?

A. I don't remember her name.

Q. Some social worker did?

A. Yes.

Q. She wanted—what they do is the same—the doctors they talk to you get your whole history, right?

A. Yes.

Q. They say to help you. The social worker said the same thing, right, I want to help you, right?

A. Yes.

Q. And she asked, Are you being abused? And she said it in a context of sexual abuse. But she held it open for any kind of abuse. You said no.

A. That is correct.

Q. In this secure facility where records would be kept you said no, right?

A. That is right.

Defense counsel was permitted to cross-examine Victim using one of the records as a prior inconsistent statement. The record revealed Victim told a social worker

her mother had hit her with an open hand on the night Victim was arrested on the alcohol charges. Victim acknowledged making that statement and said her mother had hit her. Victim also acknowledged not telling the social worker Appellant had beat her up. Victim said she did not say anything in her direct examination about being hit by her mother because the case being tried was not about her mother.

During a break in the testimony, Appellant's counsel asked the trial court for leave to review the Lakeland records to see if the records included any physical examinations that would show either signs of a beating or the lack thereof. Appellant's counsel requested ten minutes to conduct that review. The trial court granted his request. Appellant's counsel informed the trial court he found a record of a physical examination, but because there was no indication of when it was conducted, he conceded he would not be able to use that information. Appellant's counsel also requested use of records showing Victim had been diagnosed with major depression and prescribed Lithium to counter Victim's testimony she had not been diagnosed with a mental illness.[2] Appellant's counsel was permitted to inquire into Victim's depression diagnosis, but was not permitted to use the records to show she was prescribed Lithium. Counsel asked Victim on re-cross if she had been diagnosed with major depression at Lakeland. Victim replied she was not sure; she volunteered she had been put on anti-depressants while there but she was not sure of her diagnosis.

Appellant did not testify or present any evidence.

The prosecuting attorney's closing argument included multiple references that

---

**2.** Counsel also initially asked to be able to use a record reflecting a second denial by Victim of having been abused, but he later withdrew that request.

Victim's evidence was the only or the uncontradicted evidence in the case. By way of example, his remarks included:

> And that [Appellant] touched [Victim's] genitals with his hands. *That is the evidence in this case* Ladies and Gentlemen. *That is the only evidence in this case.*
>
> . . .
>
> And this case is about a 12–year–old girl starting to junior high she is old enough she knows these things are wrong, it keeps happening past her birthday in March of 1992 up until 1993 it happens again and again. She is humiliated. She is ashamed. And she doesn't want anyone to know. *And that is uncontradicted. That is the evidence in this case.*

(Emphasis added). No objections were made during the prosecutor's closing argument.

Prior to submitting the case to the jury, the trial court found beyond a reasonable doubt that Appellant was a prior felony offender. The jury found Appellant guilty of sodomy.

On June 26, 2009, the trial court sentenced Appellant to fifteen years in prison. This appeal follows.

Appellant's first two points allege the trial court erred in prohibiting disclosure to Appellant of Victim's Lakeland records because it denied Appellant: (1) meaningful discovery of relevant and material evidence; and (2) his right to meaningfully confront and cross-examine the sole witness against him. Next, Appellant contends the trial court erred in allowing Victim to testify to the circumstances surrounding her initial disclosure of abuse because it strongly implied Appellant committed an uncharged crime against another victim. Appellant's Point IV alleges plain error in allowing the State to repeatedly argue during closing argument that the evidence was uncontroverted because it violated Appellant's right against self-incrimination. Finally, Appellant contends the verdict is unsupported by sufficient evidence in that Victim's testimony required corroboration.

In response, the State contends the trial court did not err because: (1) there was no abuse of discretion in not disclosing all of Victim's records; (2) evidence of Victim's initial disclosure did not specifically associate Appellant with an uncharged crime; (3) the prosecutor's argument that there was no evidence contradicting Victim's testimony did not impermissibly comment on Appellant's decision not to testify; and (4) the verdict is supported by sufficient evidence and the corroboration rule does not apply.

The issues presented for determination here are:

1. Did the failure to permit Appellant complete access to Victim's Lakeland records deny Appellant meaningful discovery?

2. Was the scope of Appellant's cross-examination unduly limited as to prevent meaningful cross-examination?

3. Did Victim's testimony clearly associate Appellant with molesting the unidentified teenage girl?

4. Were the prosecutor's remarks in closing argument prohibited direct or indirect comment on Appellant's failure to testify?

5. Was Victim's testimony inconsistent and contradictory as to invoke application of the corroboration rule?

### Points I and II: Appellant Received Meaningful Discovery and Cross–Examination

Appellant's first point alleges error in prohibiting disclosure of Victim's Lakeland

records, and the second point contends this prohibition unduly limited the scope of Appellant's cross-examination. The State contends the trial court did not abuse its discretion because: (1) Appellant had the opportunity to review the records during trial and did not request to use the records identified in the brief; (2) the records do not go to the primary issue in the case; and (3) Appellant was not prejudiced because the records contained only cumulative impeachment evidence.

Because Points I and II are interrelated, we address them together. We determine whether the failure to permit complete access to Victim's records denied Appellant meaningful discovery, and whether limitations in the scope of Appellant's cross-examination prevented meaningful cross-examination.

**Standard of Review**

Claims that a trial court denied meaningful discovery are reviewed under the abuse of discretion standard. *State v. Taylor*, 134 S.W.3d 21, 26 (Mo. banc 2004). Abuse of discretion only occurs if a " 'ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (quoting *In re Care and Treatment of Spencer*, 123 S.W.3d 166, 168 (Mo. banc 2003)). " 'If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion.' " *Id.* (quoting *Spencer*, 123 S.W.3d at 168).

Similarly, the trial court has broad discretion in determining the permissible scope of cross-examination. *State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001). Cross-examination is used to test the accuracy, veracity, and credibility of a witness, and is not necessarily limited to those issues that tend to prove the issues at trial. *State v. Gardner*, 8 S.W.3d 66, 72 (Mo. banc 1999). "However, trial judges are permitted wide latitude to impose reasonable limits on cross-examination to address concerns of prejudice, confusion of the issues, and questioning that is only marginally relevant." *State v. DeClue*, 128 S.W.3d 864, 872 (Mo.App. S.D.2004). We review for prejudice and not mere error; and will affirm the trial court's ruling unless it was so prejudicial as to deprive defendant of a fair trial. *Id.*

**Analysis**

When reviewing a claim that a defendant was denied meaningful discovery, this Court determines whether the trial court abused its discretion in such a way as to result in fundamental unfairness. *Taylor*, 134 S.W.3d at 26. In the context of a discovery dispute, " '[f]undamental unfairness occurs when the state's failure to disclose results in defendant's genuine surprise and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence.' " *Id.* (quoting *State v. Tisius*, 92 S.W.3d 751, 762 (Mo. banc 2002)). A " 'defendant is not entitled to information on the mere possibility that it might be helpful, but must make 'some plausible showing' how the information would have been material and favorable.' " *Id.* (quoting *State v. Goodwin*, 65 S.W.3d 17, 21 (Mo.App. S.D.2001)).

To protect privileged material *and* a defendant's need for evidence, the United States Supreme Court established that the "trial court should conduct an *in camera* inspection of the evidence, and determine if it is relevant and material." *State v. Newton*, 925 S.W.2d 468, 471 (Mo. App. E.D.1996) (citing *U.S. v. Nixon*, 418 U.S. 683, 714–15, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). A defendant's due process rights are not violated by an *in camera*

review and a denial of disclosure if no relevant information is contained therein. *State v. Koenig,* 115 S.W.3d 408, 415 (Mo. App. S.D.2003). Relevant evidence tends to confirm or refute a fact in issue, or corroborate evidence that is relevant and pertains to the primary issue in the case. *State v. Freeman,* 212 S.W.3d 173, 176 (Mo.App. S.D.2007). In the context of the discovery issue presented here, " '[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' " *State ex rel. White v. Gray,* 141 S.W.3d 460, 464 (Mo.App. W.D.2004) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)).

 "A fundamental interest secured by the confrontation clause is a defendant's right of cross-examination." *State v. Moorehead,* 811 S.W.2d 425, 427 (Mo.App. E.D.1991). "This right of confrontation encompasses the right to cross-examine a witness to determine the accuracy of his/her testimony." *Id.* However, a defendant's right to cross-examine his accuser is not without limitation. *DeClue,* 128 S.W.3d 864 at 872. "The opportunity for effective cross-examination does not necessarily include 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Id.* (quoting *State v. Guinn,* 58 S.W.3d 538, 547 (Mo.App. W.D.2001)). "The right to confront is satisfied if defense counsel has wide latitude at trial to cross-examine witnesses; it does not include a right to pretrial disclosure of any and all information that might assist cross-examination." *State v. Taylor,* 944 S.W.2d 925, 931 (Mo. banc 1997).

 Here, Appellant specifically alleges error with the failure to disclose portions of the records containing prior inconsistent statements by Victim regarding her motives for making claims against Appellant, her fear of Appellant, which parent had struck her, and that no abuse occurred.[3] After an *in camera* review of Victim's records, the trial court allowed disclosure of two portions of the records memorializing Victim's denial of prior physical or sexual abuse. The trial court did not find any additional records Appellant sought to be relevant. Appellant does not dispute that the records he sought to introduce were protected from disclosure by the physician-client privilege and counselor-client privilege;[4] rather, Appellant contends the privilege must yield to protect his due process right and his Sixth Amendment right to confront the wit-

---

3. We note the sealed records were entered as "Court's Exhibit 1" for the purpose of appellate review. Nevertheless, Appellant failed to deposit Exhibit 1 with this Court as required by Rules 81.12(e) and 81.16. When an exhibit is not deposited with this Court, "its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *State v. Davis,* 242 S.W.3d 446, 449 n. 1 (Mo.App. S.D.2007). Because we are unable to review the records, we cannot conclude there was anything more in the records which could change the outcome of the trial.

4. Communications between a client and professional counselor or psychologist are privileged according to section 337.055 and section 337.540. These privileges exist without the physician-patient privilege stipulation that the communications must pertain to treatment in order to be classified as privileged. *State v. Lewis,* 735 S.W.2d 183, 187 (Mo.App. S.D.1987) (the physician-patient privilege is a fact determination in that only records or statements made to the physician necessary to prescribe treatment are protected).

nesses against him. We disagree.[5]

Appellant makes clear he sought the additional records for information that might reveal prior inconsistent statements or other matters bearing on Victim's credibility. However, Appellant was able to impeach Victim on all of her prior inconsistent statements Appellant cites in his brief without the additional records.

For example, from the disclosed records and Victim's testimony, Appellant was able to impeach the witness by showing she made inconsistent statements to mental health professionals while at Lakeland, and specifically made inconsistent statements about being physically and sexually abused by Appellant. Appellant's counsel was permitted to use a record where Victim reported being hit by her mother as a prior inconsistent statement to cross-examine Victim about the truthfulness of the allegation that Appellant had beat her. Victim admitted on cross-examination she made an inconsistent statement to the social worker regarding her Father's physical abuse and, in fact, Appellant's counsel secured Victim's admission that she lied:

> Q. All right. But you didn't tell the social worker anything about your father beating you up?
>
> A. No.
>
> Q. So at this time where we can go back and look at records and things like that. Your story is that the reason why we don't have any record of this more than 12–year–old event is that you lied to the social worker?
>
> A. Yes, I did.

Q. And you lied to the psychologist or psychiatrist, right?

A. Yes.

Appellant's counsel also extensively cross-examined Victim about the fact that Lakeland was a secure facility and there would have been no reason why fear of Appellant would have prevented her from disclosing her abuse; Victim admitted she made inconsistent statements about Appellant to the mental health professionals despite being in a secure facility. Furthermore, he cross-examined Victim about the fact that at age nineteen she moved into a house next door to Appellant and lived there until she was twenty-three years old.

Victim admitted to previously making inconsistent statements about Appellant's physical and sexual abuse and the situation in her household to Lakeland mental health professionals. Therefore, further use of the Lakeland records would have been cumulative impeachment. Since the Appellant was able to obtain information about additional prior inconsistent statements contained in the records directly from Victim, Victim's statements contained in the records are not material. *See State v. Belcher,* 856 S.W.2d 113, 117 (Mo.App. E.D.1993); *Moorehead,* 811 S.W.2d at 428. Accordingly, Appellant's due process rights were not violated by failing to disclose the additional records. "The State's compelling interest in confidentiality overrides Defendant's 'need' to discover cumulative evidence." *Koenig,* 115 S.W.3d at 415. Appellant's counsel was more than effective in demonstrating Victim's inconsistent statements to the jury. The jury was free to believe all, part, or none of

---

**5.** Appellant is also misguided in citing *State v. Davis,* 186 S.W.3d 367 (Mo.App. W.D.2005), in support of his contention the trial court erred in not disclosing Victim's Lakeland records. In *Davis,* the issue was not whether the records should have been disclosed, after an *in* camera review, but whether the defendant made the requisite showing that the material contained relevant or exculpatory evidence to justify an *in camera* review. *See Davis,* 186 S.W.3d at 372.

Victim's testimony. *State v. Hagensieker,* 299 S.W.3d 302, 305 (Mo.App. S.D.2009).

■ Moreover, Appellant's point ignores the fact the trial court granted Appellant's counsel's request to review the records in question during the trial. After reviewing the records, Appellant did not request to use the additional records that Appellant identifies in his brief. Appellant was subsequently permitted to inquire into Victim's diagnosis for depression. He initially requested to address other specific information in the records, but subsequently withdrew this request. Appellant cannot claim error when he was granted the relief he requested. *State v. Wright,* 216 S.W.3d 196, 198 (Mo.App. S.D.2007).

■ We additionally recognize Appellant erroneously contends the trial court limited cross-examination of Victim "solely to her failure to claim abuse while at Lakeland." While restrictions were placed upon disclosure of the Lakeland records, Appellant was not precluded from cross-examining Victim about her potential motives for making claims of sexual abuse against Appellant. In support, Appellant merely cites to cumulative impeachment evidence from the records that were not disclosed, and fails to direct us to instances where the trial court restricted cross-examination of Victim during trial that was not cumulative evidence or prevented him from demonstrating Victim's potential motives. A claim of error in not permitting cross-examination is not preserved if the defendant did not attempt cross-examination at trial or did not make an offer of proof about the contents of the proposed cross-examination. *State v. Raines,* 118 S.W.3d 205, 211 (Mo.App. W.D.2003).

Appellant's right to confront was also satisfied because he was given wide latitude to cross-examine Victim at trial on her motives, bias, and partiality. Signifi-cantly, the right to confront does not include a right to pretrial disclosure of any and all information that might assist cross-examination. *Taylor,* 944 S.W.2d at 931. Appellant was also able to effectively cross-examine and impeach Victim on the inconsistencies alleged without additional records. *See Moorehead,* 811 S.W.2d at 427.

It cannot be said the trial court's ruling is clearly against the logic of the circumstances then before the trial court, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Thus, the failure to permit Appellant complete access to Victim's records did not deny Appellant meaningful discovery; and, the scope of Appellant's cross-examination was not unduly limited as to prevent meaningful cross-examination. Points I and II are denied.

### Point III: No Evidence of Prior Bad Acts

Appellant next contends the trial court erred in permitting Victim to testify she told a police officer investigating abuse of another teenage girl, "[t]he same thing happened to me," because it strongly implied Appellant committed another uncharged sexual act against the teenage girl. The State argues evidence of Victim's disclosure of abuse to a police officer did not specifically associate Appellant with an uncharged crime. Here, the issue is whether Victim's testimony showed clear evidence associating Appellant with molesting the unidentified teenage girl.

### Standard of Review

■ We review the trial court's ruling on admissibility of evidence for abuse of discretion. *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006).[6]

6. This standard is previously recited and need not be repeated here.

## Analysis

A criminal defendant has a right to be tried only for the offense for which he is charged. *State v. Tyra*, 153 S.W.3d 341, 347 (Mo.App. S.D.2005). The general rule is that evidence of prior uncharged misconduct is not admissible for the purpose of showing the propensity of the defendant to commit such crimes. *Id.* However, proffered evidence only runs afoul of that rule " 'if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes.' " *Id.* (quoting *State v. Wallace*, 952 S.W.2d 395, 397 (Mo.App. W.D.1997)). " 'The necessary nexus between the defendant and the uncharged crime does not exist when the defendant's involvement in the other crime is speculative, when the defendant is not identified as the perpetrator, or when the other crime is attributed to someone other than the defendant.' " *Tyra*, 153 S.W.3d at 347 (quoting *State v. Briscoe*, 913 S.W.2d 812, 814–15 (Mo.App. W.D.1995)). "It is Appellant's burden to prove that the challenged testimony constituted evidence of other crimes." *Id.*

Here, Appellant has not shown Victim's testimony identified Appellant as the perpetrator who molested the unidentified teenage girl. The trial court allowed the prosecutor to elicit limited information regarding Victim's initial disclosure of Appellant's sexual abuse to a police officer. Victim testified she was at a CAC with a teenage girl who had made molestation allegations. Victim testified that in response to the police officer's inquiry as to whether she believed the teenage girl, Victim simply responded: "I told him I did believe her because the same thing had happened to me." Appellant alleges the use of the phrase "the same thing" "clearly stated to the jury that the allegations involving the 'teenage girl' were also allegations against [Appellant]."

We find Victim's testimony only indicative that Victim was *also* molested; speculation is required to connect the teenage girl's allegations to Appellant. Victim's statements cannot be characterized as "clear evidence associating [A]ppellant with other crimes" because her testimony is silent as to the teenage girl's perpetrator. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989). Salient factors that might link Appellant to the teenage girl's abuse were intentionally omitted.[7]

Thus, this testimony does not provide the necessary nexus between Appellant and the unidentified girl's possible perpetrator.[8] Appellant has not met his burden of proving the challenged testimony constituted evidence of other crimes. *See Tyra*, 153 S.W.3d at 347. Victim's testimony did not show clear evidence associating Appellant with molesting the unidentified teenage girl. Point III is denied.

### Point IV: No Violation of Appellant's Right against Self–Incrimination

Appellant alleges the trial court committed plain error in allowing the State to argue repeatedly during closing argument

---

7. The trial court prohibited testimony that the teenage girl was a family member and that she had been placed in the protective custody of Victim.

8. The testimony and circumstances in *Tyra* are factually similar to those in the case at hand. In *Tyra*, the defendant was accused of sodomizing his step-grandson and a mental health professional testified the victim's mother had remembered "that somebody in the vicinity of their home had a history of sexually abusing people, and that [the victim] had contact with this person on a regular basis." 153 S.W.3d at 344, 346. The trial court found the testimony contained no clear evidence associating the defendant with other crimes. *Id.* at 347.

that Victim's testimony was the only evidence and the evidence was uncontroverted because such statements violated Appellant's right against self-incrimination under the Fifth and Fourteenth Amendments to the U.S. Constitution and art. I, § 19 of the Missouri Constitution. The State responds that the prosecutor's comments did not impermissibly comment on Appellant's decision not to testify. Thus, we determine whether the prosecutor's comments are prohibited direct or indirect comment on Appellant's failure to testify.

## Standard of Review

Appellant concedes the matter was not properly preserved for review because he did not object at trial and thus requests plain error review pursuant to Rule 30.20.[9] Rule 30.20 permits plain error review if we find that the action or inaction at issue resulted in manifest injustice or a miscarriage of justice. *State v. White*, 291 S.W.3d 354, 358 (Mo.App. S.D.2009).

Plain error review involves a two-step process. *White*, 291 S.W.3d at 359. In the first step, we determine "whether there is indeed, plain error, which is error that is 'evident obvious, and clear.' " *State v. Coker*, 210 S.W.3d 374, 385 (Mo.App. S.D.2006) (quoting *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004)). Only if this predicate step is satisfied will we then turn to the second step of inquiry to determine whether plain error actually occurred. *White*, 291 S.W.3d at 359.

▨▨▨ "[P]lain error will seldom be found in unobjected closing argument." *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). "[A]lleged errors committed in closing argument do not justify relief under the plain error rule unless they are determined to have a decisive effect on the jury." *State v. Sidebottom*,

753 S.W.2d 915, 920 (Mo. banc 1988). "When considering a defendant's claim of improper comment on his right to remain silent, the appellate court must also consider the comment in the context in which it appears." *State v. Neff*, 978 S.W.2d 341, 345 (Mo. banc 1998).

## Analysis

▨▨▨ "To preserve a defendant's right not to be forced to incriminate himself, the State is not permitted to comment, directly or indirectly, about a defendant's failure to testify." *White*, 291 S.W.3d at 359. The prosecutor makes a direct reference when using such words as " 'defendant,' 'accused' and 'testify' or their equivalent.' " *Id.* (quoting *Neff*, 978 S.W.2d at 344). "An indirect reference is one reasonably apt to direct the jury's attention to the defendant's failure to testify." *Id.*, "An indirect reference ..., however, requires reversal only if the state makes it with 'a calculated intent to magnify' the defendant's decision not to testify so as to call it to the jury's attention." *State v. Bowles*, 23 S.W.3d 775, 782 (Mo. App. W.D.2000) (quoting *State v. Richardson*, 923 S.W.2d 301, 314 (Mo. banc 1996)).

▨▨▨ "Comments indicating the evidence is 'uncontroverted' or 'uncontradicted' are not direct, indirect, or certain references to a defendant's failure to testify." *State v. Quinn*, 871 S.W.2d 80, 81 (Mo. App. E.D.1994). In fact, the prosecutor may comment on the defendant's failure to offer evidence. *Id.* Statements that the evidence " 'is clear and uncontroverted as to what happened;' " " '[t]here is no evidence to the contrary;' " and " '[y]ou have been presented with no evidence inconsistent with that[ ]' " have previously been upheld as constituting neither a direct nor indirect reference to a defendant's failure

9. All rule references are to Missouri Court Rules (2010).

to testify. *White*, 291 S.W.3d at 360 (quoting *State v. Burks*, 629 S.W.2d 535, 536 (Mo.App. S.D.1981)).

Here, the prosecutor's closing comments, including: *"That is the evidence in this case[,] that is the only evidence in this case[,] ... and that is uncontradicted[,] that is the evidence in this case[,]"* (emphasis added), did not constitute prohibited direct or indirect comments on Appellant's failure to testify. Each of the statements Appellant complains of are similar in nature to those previously held by this Court not to constitute direct or indirect reference to a defendant's failure to testify. *See White*, 291 S.W.3d at 359; *Burks*, 629 S.W.2d at 536.[10]

Because the comments in the prosecutor's closing argument were not prohibited direct or indirect comment on Appellant's failure to testify, Appellant has failed to prove "there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Roper*, 136 S.W.3d at 900. Any further review for plain error is unnecessary. Point IV is denied.

### *Point V: Sufficient Evidence Supported the Jury's Verdict*

Finally, Appellant contends the trial court erred in failing to grant his motion for judgment of acquittal because the State failed to present a submissible case in that Victim's testimony was contradictory and required corroboration. The State argues the jury verdict was supported by sufficient evidence and the corroboration rule does not apply. The issue for determination is whether Victim's testimony was inconsistent and contradictory as to invoke application of the corroboration rule.

### Standard of Review

In reviewing the denial of a motion for acquittal, we determine if the State adduced sufficient evidence to make a submissible case. *State v. Davis*, 219 S.W.3d 863, 866 (Mo.App. S.D.2007). "'Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Wright*, 998 S.W.2d 78, 81 (Mo.App. W.D.1999)). In applying this standard, we "must examine the elements of the crime and consider each in turn; reviewing the evidence in the light most favorable to the judgment; disregarding any contrary evidence; and granting the State all reasonable inferences from the evidence." *Davis*, 219 S.W.3d at 866. "Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the jury and are not for review on appeal." *State v. Nichols*, 20 S.W.3d 594, 597 (Mo.App. S.D. 2000).

### Analysis

In sexual offense cases, the victim's uncorroborated testimony alone is generally sufficient to sustain a conviction. *State v. Paxton*, 140 S.W.3d 226, 229 (Mo. App. S.D.2004). However, the "corroboration rule" is an exception that applies in the particular context of sexual offense cases. *Id.* at 230. "'Corroboration is mandated only when the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is rendered doubtful such that corroboration of the victim's testimony is required to

---

**10.** We additionally note statements made in closing argument "will rarely amount to plain error, and any assertion that the trial court erred for failure to intervene sua sponte overlooks the fact that the absence of an objection by trial counsel may have been strategic in nature." *State v. Cole*, 71 S.W.3d 163, 171 (Mo. banc 2002).

sustain the conviction.'" *Id.* (quoting *State v. Baker,* 23 S.W.3d 702, 709 (Mo. App. E.D.2000)). Importantly, the "corroboration rule applies only to inconsistencies within the victim's *trial* testimony and does not apply to conflicts between the victim's trial testimony and the victim's out-of-court statements"; contradictions between trial testimony and any previous testimony or statements are for the trier of fact to reconcile and to consider when judging the witness' credibility. *Paxton,* 140 S.W.3d at 230.

A review of the transcript reveals no inconsistencies in Victim's trial testimony and Appellant fails to direct this Court to any such inconsistencies. Those inconsistencies set forth by Appellant occur only between Victim's trial testimony and her out-of-court statements. Appellant points to alleged inconsistencies between statements Victim made to Lakeland mental health professionals when she was seventeen and her trial testimony that asserted Appellant molested and beat her as triggering the corroboration rule. Appellant is misguided in the application of the corroboration rule as it "applies only to inconsistencies within the victim's *trial* testimony and does not apply to conflicts between the victim's trial testimony and the victim's out-of-court statements." *See Paxton,* 140 S.W.3d at 230. Here, discrepancies between Victim's trial testimony and her prior statements were matters for the jury to reconcile and to consider when judging the witnesses credibility. *Id.* at 231.

Accordingly, Victim's trial testimony was not inconsistent and contradictory as to invoke application of the corroboration rule. Viewing the evidence in the light most favorable to the judgment, we find sufficient evidence from which a reasonable juror might have found Appellant guilty beyond a reasonable doubt. Appellant's point V is denied.

The judgment of the trial court is affirmed.

SCOTT, C.J., and BATES, J., Concur.