

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD32259 |
| | ) | |
| ROBERT DAVID NELSON, | ) | Filed July 23, 2015 |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable John G. Moody, Special Judge

AFFIRMED

A jury found Robert David Nelson ("Defendant") guilty of attempted statutory sodomy in the first degree of C.D., child molestation in the first degree of C.D., sexual misconduct involving a child (C.D.) by indecent exposure, child molestation in the first degree of K.A., sexual misconduct involving a child (K.A.) by indecent exposure, and statutory rape in the first degree of K.A. *See* sections 566.062, 566.067, 566.083, and 566.032.[1] After he was sentenced on each offense, Defendant appealed, claiming that the trial court erred in failing to timely hold a *Faretta*[2] hearing, in failing to *sua sponte* appoint substitute counsel, and in admitting evidence

---

[1] All statutory references are to RSMo Cum.Supp. 2006, unless otherwise indicated.
[2] *Faretta v. California*, 422 U.S. 806, 836, 95 S. Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (holding that a criminal defendant cannot be compelled to accept appointed counsel because the Sixth Amendment right to the assistance of counsel implicitly embodies the right to dispense with counsel).

1

pursuant to section 491.075.[3] Finding no merit in any of Defendant's claims, Defendant's convictions are affirmed.

## Factual Background

Defendant does not challenge the sufficiency of the evidence to support his convictions, so we refer only to the evidence necessary to address the issues raised in this appeal. Those facts are set forth in the light most favorable to the verdict. *State v. Hampton*, 959 S.W.2d 444, 446 (Mo. banc 1997).

The mother of C.D. and K.A. left them with Defendant while she was incarcerated. Defendant is not biologically related to the children. Jessica Tyrell, an investigator with the Children's Division, responded to a hot line call concerning the children's living situation. Because the children made disclosures that Defendant had touched them inappropriately, Tyrell placed the children in a foster home and requested a forensic interview.

Melinda Ingram, a forensic interviewer at Lakes Area Child Advocacy Center, testified that she interviewed C.D. on August 5, 2008. C.D. was seven at the time. Ingram testified that C.D. was comfortable, polite, talkative, and engaging. Ingram did not intend to use leading questions. Ingram also interviewed K.A. on August 5. K.A. was four at the time, and Ingram testified that K.A.'s behavior was age appropriate and not unusual. Both children had a follow-up interview.

Mitzi Huffman, a registered nurse, family nurse practitioner, and sexual assault nurse examiner, conducted C.D.'s second interview on October 6, 2008, following a physical examination. Huffman described C.D. as "relaxed" and "matter of fact" during this interview.

Ingram interviewed K.A. (then five years old) for the second time on October 23, 2008. K.A. told Ingram that her mother was in heaven, but in fact her mother was incarcerated.

---

[3] All references to section 491.075 are to RSMo Cum.Supp. 2011.

In every interview, each child made disclosures that Defendant had committed various sexual acts with them.

**Procedural Background**

The State originally charged Defendant with eight counts of sexual offenses against three victims. Two counts allegedly occurred in 2005 against a victim unrelated to C.D. and K.A. The remaining six counts, three counts concerning C.D. and three counts concerning K.A., form the subject of this appeal and allegedly occurred in May of 2008. The latter six counts were severed from the earlier offenses. Although represented by a public defender ("Defense Counsel"), Defendant filed an entry of appearance on March 7, 2011. That same day, the trial judge assigned to the case recused himself on his own motion. The Supreme Court of Missouri assigned the case to Judge Williams in May of 2011. Judge Williams also recused. The Supreme Court then assigned the case to Judge Moody on June 2, 2011.

On June 29, 2011, Judge Moody set the case for trial on July 25, 2011. That same day, Defendant filed "Defendant's Motion for Scheduling of Faretta Hearing" requesting a hearing on his motion that very day. Six days later, on July 5, 2011, Defense Counsel filed a motion to withdraw. In support of this motion, Defense Counsel acknowledged Defendant's purported request to represent himself but, in response to Defendant's request for standby counsel, informed the trial court that "[a] criminal defendant, . . . has no right to hybrid representation, a combination of self-representation and assistance of counsel[,]" citing *State v. Williams*, 34 S.W.3d 440 (Mo.App. 2001). In his motion, Defense Counsel asked that the trial court take up his motion to withdraw at the 491 hearing[4] set for July 11, 2011. Defense Counsel began the July 11 hearing by asking the trial court to rule on his motion to withdraw; the trial court

---

[4] This refers to the evidentiary hearing contemplated by section 491.075.1(1), related to the admission into evidence of an out-of-court statement made by a child under the age of fourteen.

3

summarily denied it. Defense Counsel represented Defendant at the 491 hearing immediately following that ruling.

Seven days later, on July 18, following an evidentiary hearing, where Defendant unequivocally orally invoked his right to self-represent in open court, Defendant signed a written waiver of counsel, and the trial court permitted him to proceed to trial self-represented. Almost immediately, Defendant asked the trial court to dismiss the case against him because he would not have time to prepare for the trial that was set for July 25, 2011. After Defendant declined the trial court's offer of a short continuance, the trial court denied Defendant's motion to dismiss. Defendant also asked the trial court to suppress the videotaped interviews of C.D. and K.A. Defendant argued that the interviewers used questions and techniques that would induce the children to divulge instances of sexual abuse and that the children were not consistent in their responses. That motion was denied as well.

Defendant was found guilty of all six counts, and the trial court sentenced Defendant to life imprisonment for attempted statutory sodomy, fifteen years' imprisonment on each of the two counts of child molestation in the first degree, four years' imprisonment on each of the two counts of sexual misconduct involving a child by indecent exposure, and life imprisonment for statutory rape in the first degree, with all sentences to run consecutively. This appeal followed.

## Discussion

### *Point I –No Untimely Hearing on Assertion of Right to Self-Represent*

Defendant contends that the trial court "erred and abused its discretion by failing to *timely* hold a hearing concerning [Defendant's] request to represent himself" such that his Sixth Amendment right to self-representation was violated. (Emphasis added.) Although the trial court held a hearing within nineteen days after Defendant's request for such a hearing, Defendant claims that hearing was not timely because it should have been held before the 491 hearing on

4

July 11. Because Defendant's "Motion for Scheduling of Faretta Hearing" did not unequivocally waive his right to counsel and invoke his right to self-representation, it did not trigger any requirement upon the trial court to hold a *Faretta* hearing to warn Defendant of the dangers of self-representation and determine whether any purported waiver of counsel was knowingly and intelligently made. Therefore, the trial court's failure to hold a non-required hearing within any particular time frame cannot have been an abuse of discretion.

Defendant's "Motion for Scheduling of Faretta Hearing" stated:

Defendant asserts that he is entitled to represent himself in the above action, that he is entitled to request from the Courts, a qualified [s]tand[b]y [c]ounsel of his choice who, due to reasons of conflict of interest should not be Missouri State Public Defender, especially in light of the fact that the compelling reason for Defendant electing to represent himself in the above action is due to his Public Defender's ineffective assistance, and that such claim is raised in Defendant's Direct Appeal of a prior conviction, under Cause No. 09AF-CR02779-02, thereby showing just cause as to grounds for requesting [s]tand[b]y [c]ounsel not associated with the State of Missouri Public Defender's Office.

Defendant's motion also requested that "the State of Missouri Public Defender Department and Public Defender, [Defense Counsel], hereby recuse themselves[.]" Defendant's motion did not state that he wanted to waive his right to counsel. It also did not request that Defendant be allowed to represent himself in the absence of the appointment of standby counsel. Rather, his motion took issue with the public defender's office and requested new counsel to act as standby counsel.

We begin by noting that although the Constitution affords Defendant the right to counsel and, conversely, the right to self-representation, these rights do "not mean that an accused is entitled to any particular attorney," **State v. Jefferies**, 504 S.W.2d 6, 7 (Mo. 1974) (quoting **State v. Williams**, 419 S.W.2d 49, 54 (Mo. 1967)), or that the accused is entitled to have "the best of both worlds" —self-representation and representation by counsel, **State v. Hampton**, 959 S.W.2d

5

444, 448 (Mo. banc 1997). Defendant cannot argue both that he should have been allowed to proceed self-represented and that he should have been appointed counsel. *Hampton*, 959 S.W.2d at 447. A defendant choosing to forgo his right to counsel must do so unequivocally. *State v. Black*, 223 S.W.3d 149, 154 (Mo. banc 2007). "[A]mbiguous requests are not sufficient to assert the right." *Id.* at 153.

In *Hampton*, the defendant asked to represent himself because he wanted to be able to make the final decisions on matters, but he also told the trial court that he wanted counsel to conduct voir dire. 959 S.W.2d at 448. The Supreme Court held that the defendant's invocation of the right to self-representation did not amount to an unequivocal waiver of the right to counsel because he never expressed the desire to completely forgo the assistance of counsel. *Id.* "'A defendant must make an explicit choice between exercising the right to counsel and the right to self-representation[.]'" *Id.* (quoting *U.S. v. Arlt*, 41 F.3d 516 (9th Cir. 1994)).

Defendant's motion here did not make an explicit choice and, as in *Hampton*, it did not amount to an unequivocal waiver of Defendant's right to counsel and an invocation of his right to self-represent. Defendant cites us to no authority requiring the trial court to hold a hearing on an equivocal and ambiguous request to self-represent containing reservations, qualifications, or contingencies. Rather, the trial court's requirement to hold a hearing is invoked by an unequivocal and timely waiver of counsel and request to self-represent. *Black*, 223 S.W.3d at 154. That hearing is for the dual purposes of giving a defendant the required warnings as to self-representation and to ascertain whether a defendant's request to self-represent is knowingly and intelligently made. *Id.* Conversely, there is no need or requirement for such a hearing for those purposes unless and until a defendant unequivocally invokes his right to self-represent. Here, Defendant's motion indicates that his request to represent himself is qualified and contingent

6

upon being appointed standby counsel that is unassociated with the public defender's office. Defendant's first unequivocal assertion of his right to self-representation occurred in open court on July 18, and the trial court immediately held the required hearing. Because the Defendant did not unequivocally assert this right until July 18, the trial court's immediate hearing on that day could not have been and was not untimely. Point denied.

### *Point II—No Discretionary Plain Error Review*

Defendant's second point argues, seemingly in the alternative given its logical inconsistency with his first point,[5] that the trial court plainly erred in failing to *sua sponte* appoint substitute counsel because Defendant showed "justifiable dissatisfaction" with his appointed counsel and he made it clear to the trial court that he did not have a problem with having an attorney but, rather, with having the attorney assigned to him. Acknowledging that his claim is not preserved for our review because it was not included in his motion for a new trial, Defendant requests plain error review. After a full review of the record, Defendant has failed to convince us that we should exercise our discretion under Rule 30.20[6] to review for plain error. Point denied.

---

[5] We note, again, that the law does not permit Defendant to argue both that he should have been allowed to proceed self-represented and that he should have been appointed counsel. *See **Hampton***, 959 S.W.2d at 447. Although Defendant's "Motion for Scheduling of Faretta Hearing" did not unequivocally assert his right to self-representation, the trial court commendably questioned Defendant on July 18, 2011, until the court was able to ascertain Defendant's wishes. Defendant does not argue that this waiver of counsel on that date was invalid. The trial court made every effort to advise Defendant of the difficult task he was undertaking, but Defendant laughed off the court's efforts.

> THE COURT: Okay. There's an old saying that anybody who represents himself has a fool for a client, have you heard that?
> [DEFENDANT]: Can I repeat that later if I get a conviction? [laughing]

Although Defendant may now recognize that having a fool for a client is no laughing matter, it provides no basis upon which to reverse his conviction.
[6] Rule references are to Missouri Court Rules (2015).

*Point III—No Abuse of Discretion in Admitting Children's Statements*

Defendant's final point argues that the "trial court erred and abused its discretion in admitting C.D. and K.A.'s out-of-court statements . . . pursuant to §491.075 . . . in that . . . the time, content, and circumstances of the out-of-court statements provided insufficient indicia of reliability[.]"

This Court reviews the trial court's decision regarding the admission of a child's out-of-court statements under section 491.075 for an abuse of discretion. *State v. Wadlow*, 370 S.W.3d 315, 320 (Mo.App. 2012). A trial court typically has broad discretion in deciding whether to admit evidence and, as such, a reviewing court will not disturb its decision unless a clear abuse of discretion is shown. *State v. Berwald*, 186 S.W.3d 349, 358 (Mo.App. 2005). The trial court abuses its discretion only where the trial court's findings are not supported by substantial evidence in the record, *State v. Thompson*, 341 S.W.3d 723, 729 (Mo.App. 2011), and the decision to admit evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that the decision shocks the sense of justice and indicates a lack of careful, deliberate consideration, *State v. Kennedy*, 107 S.W.3d 306, 310 (Mo.App. 2003). If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion. *State v. Hawkins*, 328 S.W.3d 799, 808 (Mo.App. 2010).

The trial court decides whether to admit the victim's out-of-court statements based on the information provided at the 491 hearing. *State v. Sprinkle,* 122 S.W.3d 652, 661 (Mo.App. 2003). Based upon that evidence,

> [t]o determine the reliability of a child's out-of-court statements for the purposes
> of section 491.075, Missouri courts look to the totality of the circumstances. In
> making this determination, the following non-exclusive factors are considered:
> (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3)

8

the lack of motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age.

*Wadlow*, 370 S.W.3d at 320 (internal citations and quotations omitted).

<u>1. Spontaneity and Consistent Repetition</u>

"[I]n cases involving such young victims and sensitive and embarrassing subject matters, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." *State v. Werneke*, 958 S.W.2d 314, 319 (Mo.App. 1997) (internal citations and quotations omitted). The jury remains free to believe all, part, or none of the testimony at trial. *State v. Hawkins*, 328 S.W.3d 799, 811 (Mo.App. 2010). Defendant argues that K.A. and C.D. were not consistent because discrepancies exist in the number of times C.D. said that she had been touched inappropriately; whether C.D. saw Defendant touch K.A.; whether Defendant used lotion; and whether K.A. told her mother. Defendant also argues that "[n]either C.D. nor K.A.'s statements were spontaneous, but rather were obtained only after extensive questioning, and very often only after leading questions, or the general repetition of the child's statements by the CAC investigators."

Although a few questions were leading and some of the forensic interviewer's techniques (head nodding, saying "excellent," etc.) could be construed as encouraging the children, Ingram did not intend to use leading questions and, overall, the majority of the statements made by the children were made with minimal, if any, prompting. Some measure of prompting is likely necessary by forensic interviewers when interviewing children as young as K.A. and C.D., who may not understand what happened to them and why the differentiation of sexual acts matter at trial. The interviews lasted about half an hour, but Ingram was considerate of when the children were too restless to continue and ended the conversations at that time. Overall, K.A. and C.D. remained consistent in repeating that they had been touched inappropriately and in identifying

9

Defendant as the offender. Although the use of some leading questions and a few discrepancies in the children's statements, considered in isolation, militates against the reliability of their statements, given the totality of the interviews and the overall general consistency of the children's descriptions of Defendant's inappropriate actions toward them, the trial court had substantial evidence before it upon which to conclude that this factor weighed in favor of reliability of the children's statements.

## 2. Mental State of the Declarant

Defendant argues that K.A. and C.D. were "uncertain" during their interviews because their worlds had been upended when they were placed in foster care the night before. During the first interviews, the children were confused about some things, such as where their mother was and where they would be staying. While forensic interviewers described the children as "tentative" at times, they also stated that they were comfortable, polite, talkative, engaging, relaxed, and age appropriate. Based upon this latter testimony and the totality of children's presentations during all the interviews, the trial court's conclusion that the children's mental states weighed in favor of the reliability of their statements was supported by substantial evidence.

## 3. Lack of Motive to Fabricate

Defendant does not set forth any motive to fabricate, and we are aware of none. Therefore, this factor weighs in favor of reliability.

## 4. Knowledge of Subject Matter Beyond Years

Defendant argues that K.A. and C.D. did not use terms that would suggest knowledge of the subject matter beyond their years and that the terms they did use could be attributed to Defendant having shown them pornographic films. Although K.A. and C.D. did not use any

10

graphic terms[7] that would suggest knowledge of sexual matters well beyond their years, they certainly did not struggle in describing what Defendant did to them in words that they did understand. Both children spoke with familiarity of sexual acts that, even without graphic descriptions, demonstrates knowledge beyond their young years.

C.D. disclosed in both of her interviews that Defendant had her and K.A. watch pornographic movies with him. Relying upon these statements, Defendant argues that "[to] the extent that the terms here even arguably could, however, demonstrate unusual knowledge, that knowledge may as much be explained by their exposure to pornographic movies, than as support for the truth of their allegations." While the trial court could have inferred that was the source of their knowledge, it did not. Rather, viewing the evidence in the light most favorable to the trial court's ruling of admissibility, we presume that it reasonably inferred that the source of that knowledge was that expressly identified by both children—the inappropriate actions taken by Defendant toward them. "When the record contains facts supporting conflicting inferences, we presume 'that the trier of fact resolved any such conflicts in favor of the prosecution, and [we] must defer to that resolution.'" *State v. Rinehart*, 383 S.W.3d 95, 100 (Mo.App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *see Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014) ("When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence."). Based upon this latter inference and the totality of children's description of sexual acts perpetrated upon them by Defendant during all the interviews, the trial court's conclusion that the children's knowledge of sexual matters beyond their years weighed in favor of the reliability of their statements was supported by substantial evidence.

---

[7] C.D. referred to sex organs as "private areas," and K.A. referred to sex organs as "pee pees."

Other than a motive to fabricate, Defendant argued these factors (leading, inconsistency, etc.) to the trial court before trial. The trial judge stated that he had watched all four videos and although he agreed that there were some flaws in questioning, overall the videos met the standard threshold of reliability. This conclusion was supported by substantial evidence as to all four of the relevant factors as set forth and discussed above. It does not shock our sense of justice or indicate a lack of careful, deliberate consideration by the trial court. We find, therefore, no abuse of discretion by the trial court in determining that the children's statements were reliable. Defendant's third point is denied.

## Decision

Defendant's convictions are affirmed.


GARY W. LYNCH, J. – Opinion author

MARY W. SHEFFIELD, P.J. – concurs

NANCY STEFFEN RAHMEYER, J. – concurs