

# Missouri Court of Appeals

## Southern District

## Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD35781 |
| | ) | |
| KEVIN LEE ELLIS, | ) | **Filed: December 19, 2019** |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF MARIES COUNTY

Honorable William E. Hickle, Circuit Judge

**<u>AFFIRMED</u>**

Kevin Lee Ellis ("Appellant") was convicted after a jury trial of the class D felony of driving while intoxicated. He complains in his sole point relied on that the trial court erred in not granting a judgment of acquittal because the State failed to prove he was intoxicated while driving. Specifically, Appellant argues that although there was evidence of his intoxication six hours after his car was seen, there was not sufficient evidence that he was driving at the time that he was intoxicated. We disagree.

As acknowledged by Appellant, in reviewing this challenge to the sufficiency of the evidence, we accept as true all evidence and its inferences in the light most favorable

1

to the verdict. ***State v. Botts***, 151 S.W.3d 372, 275 (Mo.App. W.D. 2004). The State may rely on direct and circumstantial evidence to meet its burden of proof. ***State v. Howell***, 143 S.W.3d 747, 752 (Mo.App. W.D. 2004). We may "not supply missing evidence, or give the State the benefit of unreasonable, speculative, or forced inferences." ***State v. Whalen***, 49 SW.3d 181, 184 (Mo. banc 2001) (internal quotations and citation omitted). Given this standard, for ease of reading, we will set forth the evidence in a timeline.

- There was a 12-pack of beer in Appellant's fridge and he "drank before [he] left" in his truck with his girlfriend. (Appellant's girlfriend)

- Appellant and his girlfriend got into Appellant's truck by approximately 6:30 p.m. (Appellant's girlfriend and Sheriff's deputy)

- The truck was observed traveling 85 mph and was chased by a Maries County Sheriff's deputy. The truck sped down highways and private roads with the deputy going 100 mph to try to catch it. The truck went into a field and failed to come out the gate from the field. (Sheriff's deputy)

- The truck passed the farm owner who observed it traveling at a high rate of speed on his private road at approximately 6:45 p.m. (Witness Breeding)

- The officer searched by foot and located tire tracks along a creek. He followed the tracks and found the truck resting "nose first" in an overgrown cluster of willow trees. The truck's doors were locked and the hood was "warm to the touch." The truck had been driven over some rocks and logs and was immovable. (Sheriff's deputy and Witness Breeding)

- The truck was traced to Appellant's mother. The Sheriff called Appellant's phone

around 8 p.m. and left a voice mail message stating that police were looking for him. (Sheriff's deputy and Sheriff)

- Appellant returned the call twenty to twenty-five minutes later, identified himself and said they "were only going to be able to get him for speeding and maybe driving without a license." (Sheriff)

- Appellant became more agitated during the call and began yelling; his speech was slurred. When asked if he had been drinking, Appellant replied, "Yes, earlier, but not while driving" and "I'm not even that drunk." Appellant told the Sheriff he was lost in the woods and did not know where he was; Appellant agreed to turn himself in when Appellant found a mailbox number on the road and told the Sheriff. The Sheriff stayed on the phone with Appellant until he heard officers arresting him. (Sheriff)

- Appellant's shirt was ripped, he had abrasions on his legs and dirt and mud on his face; he had a cell phone and set of vehicle keys in his pocket. (Sheriff's deputy and Lieutenant)

- Appellant smelled of intoxicants, his speech was slurred, and he had to be held up because he was swaying. (Lieutenant)

- The keys found in Appellant's pocket opened the pickup truck found in the field. (Lieutenant)

- After obtaining a search warrant, Appellant's blood was drawn. The first blood draw was .123% and the second was .120%. (Criminalist)

From the evidence above, it is clear that Appellant consumed alcohol before the chase involving his pickup. We also have Appellant's admission that he had been

3

drinking at some point and he had been driving at some point. There are only two possible drivers of the pickup, Appellant or his girlfriend. There is also evidence of Appellant's intoxication at the .123% level six hours after the chase[1] and no evidence of Appellant drinking any alcohol after the car chase. To contradict this evidence, Appellant relies on the testimony of his girlfriend that she was driving the truck and that Appellant was "laid back in the seat not feeling very good at that point in time" from drinking too much alcohol.

It is without question that the jury was free to believe some, part or all of the testimony of the witnesses. *State v. Nelson*, 465 S.W.3d 533, 540 (Mo.App. S.D. 2015). The jury could have accepted all of the testimony regarding the events of that day except the testimony that Appellant's girlfriend was driving the car. Sufficient evidence supports the conviction that Appellant was intoxicated while driving. The point is denied.

The conviction is affirmed.


Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J. – Concurs

William W. Francis, Jr., J. – Concurs

---

[1] A Missouri Highway Patrol criminalist testified about the approximation of Appellant's BAC level at the time of the chase: "So anywhere from a .17 up over a .2 BAC would be approximately what the BAC would have been four and-a-half to five hours earlier, assuming constant elimination through that time period."

4