STATE of Missouri, Plaintiff–Respondent,

v.

Lea A. FACKRELL, Defendant–Appellant.

No. SD 28586.

Missouri Court of Appeals, Southern District, Division Two.

March 6, 2009.

Stuart Huffman, Springfield, MO, for Appellant.

Dean Matthews, Waynesville, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Lea A. Fackrell ("Defendant") was charged with the misdemeanor offense of

animal abuse pursuant to section 578.012.[1] After a jury trial, Defendant was convicted of that offense, waived jury sentencing, and received a sentence of one year in the county jail plus a $100 fine. The court suspended the execution of that sentence and placed Defendant on two years' supervised probation. Defendant now appeals on the grounds that the evidence was insufficient to support her conviction. Finding no such deficiency, we affirm.

## I. Facts and Procedural Background

Viewed in the light most favorable to the verdict, *State v. Mullins*, 140 S.W.3d 64, 67 (Mo.App. W.D.2004), the facts are as follows. Defendant and her husband had separated. Defendant moved into her own place in July, 2004, and took three of their dogs with her. About a month later, Defendant noticed that one of the three dogs ("Annie") began losing some hair on her ears. Approximately two months later, Defendant noticed Annie was losing weight and gave her some "worming medicine," but Annie continued to lose weight.

On December 12, 2004, Defendant's husband stopped by Defendant's home to drop off their children for visitation. Defendant told him that Annie was "really sick" and needed to be "put down." Defendant's husband went to look at Annie in her pen and said to Defendant, "can I take her to the vet?" Defendant's response was: "You can take her to the vet, [b]ut I can't take [sic] afford to take her to the vet. I can't afford a vet bill." [2] Defendant's hus-

band then offered to take Annie to the veterinarian and pay the bill for it.

Defendant's husband took Annie home with him. Either the next day or the day after, he took Annie to Dr. Williams. Upon entering the office, Dr. Williams observed that Annie was too weak to hold her head up, "wasn't strong enough to walk," and "was dying." Dr. Williams noted Annie was extremely malnourished and weighed only forty pounds—approximately sixty pounds underweight and thirty-five pounds less than when he had last weighed her. Dr. Williams diagnosed Annie with a non-contagious, chronic mange that takes at least a month or two to develop. Dr. Williams told Defendant's husband that Annie had less than a five percent chance of survival and recommended she be put to sleep. Defendant's husband agreed and paid to have her euthanized. Because it was the worst case Dr. Williams had seen in twenty-seven years of practice, he contacted law enforcement.

A police officer subsequently interviewed Defendant and obtained a written statement from her.[3] Defendant's statement read:

> I had physical custody of three dogs: two Bloodhounds, Duke and Annie, and one mixed-breed dog, Fluffy. They have lived with me at the above address since 8 July '04. They all stayed in the same pen and were fed and watered together on a constant basis.
>
> Annie started to lose weight regardless of the amount of food she ate. I would feed her separately at times to

---

1. Unless otherwise noted, all references to statutes are to RSMo 2000.

2. During her cross-examination, Defendant testified that she never called Dr. Williams (Annie's veterinarian since she was a "new pup") or any other veterinarian to get an estimate of how much it might cost to treat Annie. When asked if she tried to find another home for Annie with someone who could

afford to take care of her, Defendant gave no audible response.

3. A copy of the written statement is not in the record, but from the trial transcript it appears the investigating police officer, Greg Halderman, read the written statement verbatim at trial.

ensure she was getting food. This was brought to the attention of my husband that I thought she might have cancer. I didn't have the money to take her to the vet for treatment, and he didn't offer.

When she got to the point where she looked extremely thin, I discussed this with him again. He said he'd take her to the vet, Dr. Williams. We found out she had mange and had to be put to sleep. All the other dogs we have ever had treated with him have always been healthy, never neglected. This was not a case of neglect, just misdiagnosis.

The State alleged Defendant had committed animal abuse in violation of section 578.012 because she "knowingly failed to provide adequate care for [Annie]."

## II. Standard of Review

■ When reviewing a challenge to the sufficiency of the evidence, we must determine whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). We review the evidence in the light most favorable to the verdict, grant all reasonable inferences from the evidence in its favor, and disregard contrary inferences unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. *Id.*

## III. Discussion

Defendant's brief raises four points of alleged trial court error: 1) failing to quash the jury panel when one of the prospective jurors stated during *voir dire* that Defendant's attorney had lied to her during a previous, unrelated matter; 2) overruling Defendant's motion for judgment of acquittal at the close of the state's evidence; 3) overruling Defendant's mo-

tion for judgment of acquittal at the close of all evidence; and 4) failing to submit a jury instruction on the lesser included offense of animal neglect pursuant to section 578.009. We will address each point in turn.

### Point I: Failure to Quash the Venire

■ During *voir dire*, in response to the prosecutor's inquiry as to whether anyone knew Defendant's attorney, prospective juror number twenty-three ("panelist # 23") indicated that Defendant's attorney had previously represented her son. When the prosecutor asked if there was anything about that relationship that made her believe she might not be able to be completely fair and impartial in the case, panelist # 23 responded: "I believe he lied to me." Defendant's attorney immediately asked to approach the bench, and a side-bar was held. At the side-bar, Defendant's attorney indicated he thought panelist # 23's comment had "tainted" the jury "to a certain extent," but did *not* request that the panel be quashed. The judge indicated he would not have panelist # 23 respond to any more questions and would question her privately later. The court then instructed the *venire* to disregard panelist # 23's last comment, asked panelist # 23 to wait outside in the hall, and told the prosecutor to proceed. The court later struck panelist # 23 for cause after questioning her outside the presence of the other prospective jurors.

■ In her brief, Defendant concedes that because she did not ask the trial court to strike the panel, the matter was not properly preserved for appellate review. As a result, Defendant requests plain error review under Rule 30.20. Under Rule 30.20, we may grant plain error review if we find that the action or inaction at issue resulted in manifest injustice or a miscarriage of justice. "Usually, disqualification

of an individual juror for bias or expression of an opinion is insufficient for challenging the entire array." *State v. Evans*, 802 S.W.2d 507, 514 (Mo. banc 1991). Panelist # 23 was ultimately struck for cause, and the court had instructed the remaining panelists to disregard her comment. The court did not err, plain or otherwise, when it did not *sua sponte*, strike the entire *venire*. Defendant has failed to show any prejudice, let alone a manifest injustice or miscarriage of justice, and we accordingly decline plain error review. Point I is denied.

### Points II and III: Sufficiency of the Evidence

■ In Points II and III, Defendant challenges the trial court's denial of her respective motions for acquittal at the close of the State's case and at the close of all evidence. As conceded at oral argument, because Defendant presented evidence after the State rested, she has waived the claim of error asserted in Point II and it is denied. *State v. White*, 798 S.W.2d 694, 696–97 (Mo. banc 1990).

■■ In Point III, Defendant contends the trial court should have granted her motion for judgment of acquittal because there was insufficient evidence to find her guilty beyond a reasonable doubt and that the verdict was against the weight of the evidence. Specifically, Defendant claims there was no evidence presented that she "knowingly" failed to provide adequate care for Annie. "On a challenge to the sufficiency of the evidence, the evidence together with all reasonable inferences is viewed favorably to the verdict and evi-

dence or inferences contrary to the verdict are ignored." *Id.* at 697. We do not determine the credibility of witnesses and only determine whether there was " 'sufficient evidence from which the court might have found the defendant guilty beyond a reasonable doubt.' " *State v. Fuelling*, 145 S.W.3d 464, 469 (Mo.App. W.D.2004) (quoting *State v. Sellmeyer*, 108 S.W.3d 780, 781 (Mo.App. W.D.2003)).

Under section 578.012.1(3), "[a] person is guilty of animal abuse when a person: . . . (3) Having ownership or custody of an animal knowingly fails to provide adequate care. . . ." Section 578.012.1(3). "Adequate care" is defined as the "normal and prudent attention to the needs of an animal, including wholesome food, clean water, shelter and *health care as necessary to maintain good health* in a specific species of animal." Section 578.005.1 (emphasis added).

Unlike "adequate care," "knowingly" is not specifically defined within the confines of section 578.005.[4] "Knowingly," however, is defined as follows in the Criminal Code:

3. A person 'acts knowingly', or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

Section 562.016.3.[5]

■ Direct proof that a person acted "knowingly" is often unavailable and is

---

4. Section 578.005 provides definitions for terms in section 578.005 to 578.023—Miscellaneous Offenses.

5. The instruction containing the definition of "knowingly" proffered by Defendant and used by the court was substantially similar. It

stated: "[a] person knew, or acts knowingly, or with knowledge, (a) with respect to his or her conduct or to attendant circumstances when the person was aware of the nature of his or her conduct or that those circumstances existed, or (b) with respect to a result

usually inferred from evidence of the circumstances surrounding the incident. *Fuelling,* 145 S.W.3d at 468; *see State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992) (referring generally to proof of mental state by circumstantial evidence).

In this case, Defendant's testimony and written statement indicated she knew Annie was sick over the course of several months and even thought Annie had cancer. Despite this knowledge, Defendant did not even attempt to contact a veterinarian. Instead, Defendant testified she gave Annie "worming medicine" and ensured she ate. Defendant admitted this course of action was not effective, and Annie "kept getting worse." Defendant's husband testified Defendant told him she was going to take Annie to the veterinarian because she was sick and never asked him to do so. Dr. Williams testified Annie's condition would have taken at least a month or two to develop.

Although Defendant testified that she did not have the money to take Annie to the veterinarian and that her husband had refused to help her when asked, the jury was not required to believe her testimony. The evidence permitted a reasonable juror to find beyond a reasonable doubt that Defendant acted knowingly. Point III is denied.

### Point IV: Failure to Instruct on a Lesser Included Offense

Defendant's Point IV asserts the trial court erred when it failed to submit a jury instruction on the lesser included offense of animal neglect. *See* section 578.009.[6] At trial, Defendant not only failed to request such an instruction, but also objected to it being given when it was offered by the prosecution. Despite now claiming as error the very decision she had previously supported, Defendant cites to *State v. Derenzy,* 89 S.W.3d 472 (Mo. banc 2002), for the proposition that "[o]nce the State requested that the trial court provide the jury with an instruction on the lesser-included offense, the instruction was mandatory." Defendant's proposed statement of law and her reliance on *Derenzy* is misplaced.

*Derenzy* clearly notes two prerequisites to a trial court's instructing a jury on a lesser included offense: 1) the *defendant* must request the instruction; and 2) the evidence must provide a basis for a verdict acquitting the defendant of the greater offense and convicting him of the lesser. *Id.* at 474 (emphasis added). Because Defendant did not satisfy the first prerequisite, we need not determine whether the second was met. "If a defendant does not specifically request a lesser included offense instruction, the defendant may not complain about the trial court's failure to give the instruction." *State v. Fowler,* 938 S.W.2d 894, 898 (Mo. banc 1997). As our Supreme Court pointed out:

> Part of the rationale for the rule that requires a defendant to request a lesser included instruction before the defendant can complain that the instruction was not given is related to trial strategy. It is often a matter of strategy as to whether or not to request a lesser included offense instruction. A tactical decision not to request the lesser included offense instruction is based upon the belief that the jury may convict of the lesser offense if it is submitted, but the

---

of a person's conduct when he or she was aware that his or her conduct was practically certain to cause that result."

6. "A person is guilty of animal neglect when he has custody or ownership or both of an animal and fails to provide adequate care or adequate control, which results in substantial harm to the animal." Section 578.009(1).

jury may not convict the defendant of any crime if the lesser offense is not submitted.

*Id.* Defendant cannot be permitted to gamble on an outright acquittal at trial, then, after the jury has voted to convict, complain that it was error not to submit the very instruction she had earlier opposed. "A party cannot complain on appeal of any alleged error in which, by his or her own conduct at trial, he or she joined in or acquiesced to." *Johnson v. Moore,* 931 S.W.2d 191, 195 (Mo.App. E.D. 1996). Point IV is also denied, and the judgment of the trial court is affirmed.

PARRISH and RAHMEYER, JJ., Concur.