**STATE of Missouri, Plaintiff–Respondent,**

v.

**Larry David WHITE, Defendant–Appellant.**

**No. SD 29267.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 15, 2009.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Larry White ("Defendant") appeals his conviction of the class C felony of second-degree burglary,[1] claiming the trial court erred in: 1) admitting evidence of a prior burglary Defendant had committed on the same premises because it was more prejudicial than probative; and 2) by failing to *sua sponte* declare a mistrial after the prosecutor commented on his failure to testify. Because the evidence of the prior burglary was highly probative of the critical issue of Defendant's intent and because the prosecutor's indirect reference was not designed to draw attention to Defendant's failure to testify, we affirm the conviction.

## I. Factual and Procedural Background

This was the second time Defendant had been charged with burglarizing this building occupied by a group of Certified Public Accountants ("the firm") that had previously employed him as a janitor. The first time Defendant had been charged with breaking into the building occurred three years before the events at issue in this case. Defendant eventually pled guilty to that charge, admitting he had "disturbed" the right-hand drawer of the desk of one of the firm's partners, John Scherer ("Scherer"). That drawer normally contained petty cash as well as payments (in the form of both cash and checks) that Scherer periodically received in connection with certain rental properties he owned. During his guilty plea to that offense, Defendant admitted he had entered the building without authorization and with an intent to steal.

On January 17, 2007, Don Collins ("Collins"), another partner in the firm, received a call informing him that one of the building's windows had been broken. Collins arrived at the firm and found that the broken window was in Scherer's office. Collins also observed that the upper right-hand drawer of Scherer's desk was open. This was the same drawer Defendant had previously pled guilty to "disturb[ing]." Scherer testified that all of his desk drawers were closed when he left his office the day before this latest break-in. Although Scherer testified that "there was a trail of postage stamps and business cards, things that I usually keep up with, renters' phone numbers and addresses, scattered across the floor towards the window," nothing was reported as having been stolen. Collins told the police they should probably question Defendant about the break-in.

Police officers found fingerprints and a piece of flesh on the broken glass in Scherer's office. The officers obtained a search warrant for Defendant's vehicle and found pieces of glass in its floorboard and dried blood on its steering wheel. When Defendant was later arrested, he had an ace bandage wrapped around his knee. The officers noticed that Defendant's knee was bleeding and had a scrape and a "gouge wound." DNA samples taken from the glass and flesh in Defendant's vehicle and

---

1. *See* section 569.170, RSMo 2000.

the flesh in Scherer's office all matched Defendant's DNA profile.[2]

At a pre-trial hearing, Defendant filed a motion *in limine* that sought to prevent the admission of any evidence about Defendant's prior burglary at the firm on the grounds that it was too remote in time and too prejudicial. The State argued that the evidence of the prior burglary was admissible to prove "the specific intent to steal or to commit some specific crime while the [Defendant] was in the building." The trial court denied Defendant's motion *in limine* and ruled that it would allow the State to present evidence of the prior burglary for that limited purpose. In his closing argument, the prosecutor informed the jury that proving Defendant intended to steal something when he entered the building was critical to proving that he had committed the crime of burglary (instead of merely trespassing) because the State had no proof that Defendant had actually taken anything from the building.

## II. Analysis

*Point I: Evidence of the Prior Burglary*

■ Defendant's first point on appeal alleges the trial court abused its discretion when it allowed the State to introduce evidence of his prior burgling of the same desk drawer. While Defendant does not challenge the logical relevance of this evidence, he does assert that it was not legally relevant; that its prejudicial effect outweighed its probative value in that it would be used by the jury as evidence that Defendant had a general propensity to commit crime.

■ The trial court has broad discretion in determining the admissibility of evidence. *State v. Edberg*, 185 S.W.3d 290, 293 (Mo.App. S.D.2006). We will not find the trial court to have abused that broad discretion unless the ruling at issue is so clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.*

■ Evidence of a defendant's prior criminal acts is generally inadmissible. *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008). This general ban recognizes a defendant's constitutional right to be tried only for the crime he has been charged with committing.[3] *Id.* at 587–88. There are, however, exceptions to this general rule. When evidence of a defendant's prior criminal act is both logically relevant (has a tendency to directly establish defendant's guilt on the crime currently charged) and legally relevant (its probative value outweighs its prejudicial effect), it is admissible. *State v. Nichols*, 207 S.W.3d 215, 227 (Mo.App. S.D.2006).

In his opening statement, Defendant's counsel told the jury:

Ladies and gentlemen, on the night of January 17th, 2007, [Defendant's] hands were not clean but they were empty. Yes, he did enter that building, but he didn't take anything. Nothing was ever reported as stolen. It's a cold January night, he's out driving around. No place to go, really. He'd been staying with his sister on and off. No place of his own to call home. He passes by the office, gets out. Sees a piece of concrete there in

**2.** The test showed that the probability of someone other than Defendant being the source of the DNA at issue was 1 in 14.3 quadrillion in the general population and 1 in 2.2 quadrillion in the African American population.

**3.** "This right arises from the guarantee of article I, sections 17 and 18(a) of the Missouri Constitution that a defendant has the right to be tried only on the offense charged." *Vorhees*, 248 S.W.3d at 587–88.

front of the building, throws it through. On his way in actually cuts his leg and actually leaves a piece of flesh behind. He then comes back out of that office with exactly what he went inside with, which is nothing.

[Defendant] did commit a crime that night, but it wasn't a burglary. He didn't enter that building with the intent to steal anything. This was just a trespass.

This defense strategy made Defendant's intent upon entering the building the primary issue in the case. And while Defendant does not dispute that evidence of prior criminal acts is generally admissible if it tends to establish such intent, *Nichols,* 207 S.W.3d at 227, he argues that in his particular case the prejudicial effect of allowing the jury to hear about his prior burgling of the firm's building outweighed its probative value in proving his intent. This is a legitimate concern as evidence of other crimes is highly prejudicial and should be utilized "only when there is strict necessity." *State v. Helm,* 892 S.W.2d 743, 745 (Mo.App. E.D.1994).

In *Helm,* the defendant was convicted of second-degree burglary. *Id.* at 744. On December 1, 1991, police officers, summoned by a silent alarm, apprehended the defendant exiting an Eagles Lodge. *Id.* The defendant (who had taken nothing from the lodge) testified that he "did not enter the lodge with the intent to steal, but only wanted to get warm because it was cold outside." *Id.* The State introduced evidence of two prior burglaries; one that occurred on October 12, 1981 (at a technical school), and one that occurred on March 14, 1990 (at another Eagles Lodge). *Id.* at 745. The court held that the prior burglaries were too tenuous in time to constitute evidence of the defendant's intent and that the State had "stepped over the line from legitimately proving [the de-

fendant's] intent to improperly proving [the defendant's] bad character and criminal propensity." *Id.*

The instant case is factually distinguishable from *Helm.* Here, the prior break-in occurred within three years of the charged conduct and involved the very same desk drawer; a drawer Defendant had previously found to contain cash. As a result, the challenged evidence was highly probative of Defendant's intent. The jury was also instructed to consider evidence of any offense other than the one currently being tried only "on the issue of [Defendant's] intent to steal." "Jurors are presumed to follow the court's instructions." *State v. Forrest,* 183 S.W.3d 218, 230 (Mo. banc 2006). The trial court's conclusion that the evidence of Defendant's prior burglary was more probative than prejudicial was a reasonable one; it was certainly not so arbitrary or unreasonable as to shock the conscience of this court or demonstrate a lack of careful consideration. Point I is denied.

*Point II: Reference to Defendant's Failure to Testify*

■ Defendant's second point alleges the trial court plainly erred in failing to *sua sponte* intervene to declare a mistrial or give a curative instruction "after the prosecutor told the jury during his argument that there was no contrary evidence presented that [Defendant] did not have the intent to steal, because this argument violated [Defendant's] rights against self-incrimination, to not have the State comment on his failure to testify. . . ." Defendant concedes that because he did not object at trial, the matter was not properly preserved for review. As a result, Defendant requests plain error review pursuant to Rule 30.20. "Under Rule 30.20, we may grant plain error review if we find that the action or inaction at issue resulted in manifest injustice or a miscarriage of justice."

*State v. Fackrell,* 277 S.W.3d 859, 862 (Mo. App. S.D.2009).

■ Our review for plain error involves a two-step process. *State v. Millsap,* 244 S.W.3d 786, 789–90 (Mo.App. S.D.2008). In our first step, we ascertain "whether substantial grounds for plain error have been facially established by the party's allegation." *Id.* at 790. Only if this predicate step is satisfied—substantial grounds for plain error facially appears—will we then determine whether "plain error actually occurred." *Id.* Appellate courts are "especially wary" of the claim that a trial court has failed to *sua sponte* declare a mistrial. *State v. Tilley,* 104 S.W.3d 814, 819 (Mo.App. S.D.2003).

This follows because generally the double jeopardy clause of the Fifth Amendment to the United States Constitution bars retrial if a judge grants a mistrial in a criminal case without the defendant's request or consent. *State v. Tolliver,* 839 S.W.2d 296, 299[9] (Mo. banc 1992).

To convict a trial court of an error, not put forth by the defendant (e.g., failure to declare a mistrial *sua sponte* ), allows an accused to stand mute when incidents unfavorable to him or her occur during trial, gamble on the verdict, and then seek favorable results on appeal. [*State v.*] *Weeks,* 982 S.W.2d [825] at 838–39 n. 13 [Mo.App. S.D.1998]. This puts courts in an untenable position, and it is contrary to the principle of law that an appellate court will not convict a trial court of an error not put before it to decide. *Id.*

*Id.* at 819–20.

■ To preserve a defendant's right not to be forced to incriminate himself, the State is not permitted to comment, directly or indirectly, about a defendant's failure to testify. *State v. Redman,* 916 S.W.2d 787, 792 (Mo. banc 1996). A direct reference

"is made when the prosecutor uses words such as 'defendant,' 'accused' and 'testify' or their equivalent." *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). "An indirect reference is one reasonably apt to direct the jury's attention to the defendant's failure to testify." *Id.* We must consider the comment in the context in which it appears and reverse the conviction only if we find "a calculated intent to magnify that decision so as to call it to the jury's attention." *Id.* at 344–45.

The portion of the prosecutor's closing argument at issue was as follows:

Why would he go in there? I don't know, other than to suggest that when you go in somebody's—someplace you're not allowed to be, you break out a window to get in there, and you go rifling through a desk where there was money before that you knew about, that the reason you went in there was to steal. And I submit to you that that element is established beyond a reasonable doubt. *There's been no evidence to the contrary.* (emphasis added).

■ "Statements made in closing argument will rarely amount to plain error, and any assertion that the trial court erred for failure to intervene sua sponte overlooks the fact that the absence of an objection by trial counsel may have been strategic in nature." *State v. Cole,* 71 S.W.3d 163, 171 (Mo. banc 2002). Here, the prosecutor made no direct reference to the fact that Defendant did not testify. Defendant's brief claims that his testimony would have been the only means of contradicting the State's assertion that he entered the building with an intent to steal. Intent however, may also be established by circumstantial evidence. *State v. Hairston,* 268 S.W.3d 471, 475 (Mo.App. S.D. 2008). Defendant could have presented circumstantial evidence to show that he did

not have an intent to steal when he entered the building. In fact, the previously quoted portion of Defendant's opening statement intimated that such circumstantial evidence would be presented by the defense.

 A prosecutor is permitted to comment on a defendant's failure to offer evidence. *State v. Quinn,* 871 S.W.2d 80, 81 (Mo.App. E.D.1994). "Comments indicating the evidence is 'uncontroverted' or 'uncontradicted' are not direct, indirect, or certain references to a defendant's failure to testify." *Id.* (citing *State v. McDowell,* 832 S.W.2d 333, 335 (Mo.App. E.D.1992)). In *State v. Burks,* 629 S.W.2d 535 (Mo. App. S.D.1981), the prosecutor's closing argument included statements that the evidence "is clear and uncontroverted as to what happened;" "There is no evidence to the contrary;" and "You have been presented with no evidence inconsistent with that." *Id.* at 536. This court found those statements to be "neither a direct nor indirect reference to the failure of a defendant to testify." *Id.*

This case is also similar to *State v. Sechrest,* 485 S.W.2d 96 (Mo. banc 1972).[4] In *Sechrest,* the defendant was convicted of burglary in the second degree. *Id.* at 97. The prosecutor argued: "Like I said, this is a case of circumstantial evidence. There was no one who could identify [the defendant] as the man who entered that home. But yet there is no one who has come forward with a reasonable explanation for how the property got into the defendant's car." *Id.* at 98. The defendant alleged "that the statement under review would have been considered by the jury as a comment on his failure to testify because he was the only person who could have explained the presence of the articles in the car." *Id.* at 98. One of the items

the defendant had been found guilty of taking was a billfold with $82.00 inside. *Id.* at 97. The court found that the prosecutor's statement was not an improper comment on the defendant's failure to testify, in part, because the statement could have referred to the defendant's failure to offer circumstantial evidence in the form of "evidence from his bank showing that he had recently withdrawn $80 or more from his account." *Id.* at 98–99.

The prosecutor's statement in closing argument in the instant case that "there's been no evidence to the contrary" did not constitute a prohibited direct or indirect reference to Defendant's failure to testify. No manifest injustice or miscarriage of justice facially appears. Any further review of Point II for plain error is unnecessary. The point is denied, and the judgment is affirmed.

PARRISH, J., Concurs in part and concurs in result.

RAHMEYER, J., Concurs.

JOHN E. PARRISH, Judge, concurring in part and concurring in result.

I concur in Point I and concur in the result reached in Point II. I would not grant plain error review of Point II. As the principal opinion notes, defendant failed to object to the part of the state's closing argument about which he now complains and, therefore, did not preserve the issue he asserts in Point II for appellate review.

Plain error review "should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *State v. McMillin,* 783 S.W.2d 82, 98 (Mo.banc 1990) (quoting, *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983)).

---

4. *Sechrest,* however, did not involve plain error review because the defendant had objected to the statement at trial and actually requested a mistrial.

Relief should rarely be granted on assertions of plain error as to closing argument because, "in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo.banc 1988).

*State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995).