STATE of Missouri, Respondent,

v.

Kevin T. BROWNING, Appellant.

No. SD 30991.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 23, 2012.

Stuart Huffman, Springfield, MO, for Appellant.

Chris Koster, Attorney General and John M. Reeves, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Following a jury trial on July 28, 2010, Kevin T. Browning ("Browning") was convicted on one count of the class C felony of abuse of a child, pursuant to section 568.060,[1] and two counts of the class D felony of invasion of privacy, pursuant to section 565.253. Finding no merit to Browning's claims, we affirm the judgment of the trial court.

## Factual and Procedural Background

We recite the relevant evidence in the light most favorable to the verdict. *See State v. McDonald,* 321 S.W.3d 313, 315 (Mo.App. S.D.2010).

### *Abuse–of–a–Child Incident*

Browning, a school bus driver, drove C.P.[2] and her brother to and from school. C.P. and her brother were the last to get off the bus on the way home from school. In early 2006, when C.P. was either 16 or 17 years old, she and her brother were the only students left on the bus. C.P. was sitting in the front seat, while her brother was asleep in the back of the bus. Browning told C.P. to show him her "boobies." C.P. then lifted her shirt, exposing her breasts to Browning. While still driving the bus, Browning turned and used his cell phone to take a photograph and a video of C.P. holding her shirt up exposing her breasts to him. Authorities subsequently discovered both the photograph and the video on Browning's laptop.

Browning admitted to having a cell phone capable of taking both photos and video. Browning admitted taking a picture of C.P. for "disciplinary purposes"; however, he confirmed that he never made a disciplinary report about the matter. Browning denied telling C.P. to show him her breasts and that he ever looked at the photograph and video of C.P.'s breasts, but admitted that he generally forwarded all pictures from his cell phone to his laptop.

Cory Schuster ("Schuster") testified he was Browning's friend and Browning had also been his school bus driver. According to Schuster, he helped Browning buy his first computer and later helped Browning build a computer. Schuster testified he showed Browning how to perform various functions on the computer because Browning "didn't have any idea how to use it." Schuster further testified he showed Browning how to transfer data from Browning's cell phone to Browning's computer, but that Schuster usually had to help Browning "retrieve files from anything he happened to have … [a]n MP3 player or a cellphone [sic] or anything like that." Schuster testified he saw most of Browning's photos because he had to help Browning "rearrange them," but never saw any pictures or videos of C.P. on Browning's computer as far as he could remember.

Paul Cordia, an employee with the Missouri State Highway Patrol forensics' unit, testified regarding the photograph and video of C.P. found on Browning's computer. Cordia testified that the photograph

---

1. All references to statutes are to RSMo Cum. Supp.2005, unless otherwise indicated. All rule references are to Missouri Court Rules (2011).

2. C.P. has Down Syndrome.

and video were probably not taken at the same time as the angle of the camera appeared to be different in each. He also explained that the photograph and video files found on Browning's computer were created on January 8, 2006, and last accessed on April 30, 2006. He noted there was no way to determine the number of times the photograph and video had been accessed between January 8, 2006 and April 30, 2006.

### *Invasion–of–Privacy Incident*

Browning was K.T.'s neighbor. Browning had a DVD collection of over 2000 movies. K.T. and her friend, H.M., occasionally went to Browning's house to borrow movies. During the 2006–2007 school year, when K.T. was 16 years old and H.M. was 14 years old, they both went to Browning's house to borrow movies. That day, they were unaware that Browning had placed a video camera on the floor of his bathroom closet and set it to record. The camera was pointed directly at the toilet, which was immediately across from the closet. After H.M. and K.T. came over that day, they each went to the bathroom within a few minutes of each other. The camera recorded both of them sliding off their pants and underwear, sitting on the toilet, using the bathroom, and then standing up.

K.T. testified that while she did not know exactly when the video was taken, she did not believe Browning was inside his house on the day it was taken. She did not think she called Browning in advance that day, but rather went over to where he was working on a trailer next door and asked him if she and H.M. could borrow some movies. K.T. further testified she did not learn of the video until approximately three years later when a law enforcement officer had K.T. and her mother watch the video.

H.M. testified she could not recall the occasion this incident happened, but she was probably around 14 years of age—2006 or 2007. H.M. testified that K.T. usually would let Browning know when she and K.T. were coming over to borrow DVDs, but did not recall if K.T. did that day. H.M. also did not believe Browning was in the house that day. Browning never told her about the camera in the bathroom.

At trial, K.T. and H.M. viewed the video and both girls identified Browning's bathroom, and identified Browning as the person sitting on the toilet setting up the camera.

Browning did not dispute that the camera used was his, that he set it up, and that it was his bathroom on the video. Browning testified he installed the camera in his bathroom sometime during the 2006–2007 school year on a day he thought some "guys" were coming over to watch movies. Browning testified that he suspected some of the guys were picking out movies, removing them from their containers, and then going into the bathroom and putting them "in their shirt or their pants leg." Browning stated that was the reason he installed the camera in the bathroom—he was only trying to catch the guys he thought were stealing his DVDs. Browning further testified it was never his intention to videotape K.T. or H.M. going to the bathroom. Browning stated he did not know that K.T. and H.M. were coming over to borrow movies that day.

The jury convicted Browning on all three counts. Browning was sentenced to concurrent terms of seven years on the one count of abuse of a child, and four years' imprisonment on the two counts of invasion of privacy. This appeal followed.

Browning raises four points on

appeal.[3] Browning's first three points contend the trial court erred because insufficient evidence supported each conviction. We do not address Browning's first three points relied on in the order presented in Browning's brief; rather, in order to remain consistent with the chronology of the events, we begin with the abuse-of-a-child conviction. In point four, Browning asserts section 565.253 is constitutionally void as being vague and overbroad because as written and as applied, the plain meaning of the statute criminalizes routine and everyday conduct.

The primary issues presented for our determination are:

1. Was the evidence sufficient to permit a reasonable juror to find beyond a reasonable doubt that Browning committed the crime of abuse of a child?

2. Was the evidence sufficient to permit a reasonable juror to find beyond a reasonable doubt that Browning acted knowingly in secretly videotaping H.M. and K.T.?

3. Does Browning's claim that section 565.253 is unconstitutionally vague and overbroad, on its face, establish substantial grounds for believing manifest injustice or a miscarriage of justice has occurred?

## Point III: Sufficient Evidence for Abuse–of–a–Child Conviction

Browning alleges the trial court erred in overruling Browning's judgment of acquittal as to the abuse-of-a-child conviction at the close of all evidence because there was insufficient evidence to establish guilt beyond a reasonable doubt in that all of the State's evidence was circumstantial and contradictory.

## Standard of Review

In reviewing a challenge to the sufficiency of evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). This Court views the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict. *Id.* "Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered." *State v. Latall*, 271 S.W.3d 561, 568 (Mo. banc 2008). The reliability, credibility, and weight of witness testimony are for the fact-finder to determine, and it is within the fact-finder's province to believe all, some, or none of the witness' testimony in arriving at its decision. *State v. Cannafax*, 344 S.W.3d 279, 284 (Mo.App. S.D. 2011). "This same standard of review applies when reviewing a motion for a judgment of acquittal." *State v. Botts*, 151 S.W.3d 372, 375 (Mo.App. W.D.2004).

## Analysis

A person commits the crime of abuse of a child if such person "[p]hotographs or films a child less than eighteen years old engaging in a prohibited sexual act . . . ."

---

**3.** Initially, we note Browning's first three points relied on are defective. Browning's first three points relied on violate Rule 84.04 in that the points do not specifically identify the legal reasons for Browning's claim of reversible error with an explanation in summary fashion as to why those reasons support the claim of reversible error. *See* Rule 84.04(d). Violations of Rule 84.04 are grounds for dismissal; however, we may choose to review them if the deficiency does not impede a disposition on the merits. *Hudson v. State*, 270 S.W.3d 464, 467 (Mo.App. S.D.2008). Because we believe we are able to discern Browning's position, we choose to review them.

§ 568.060.1(2). As used in section 568.060, "prohibited sexual act" includes "nudity, if such nudity is to be depicted for the purpose of sexual stimulation or gratification of any individual who may view such depiction." § 568.060.2.

In support, Browning merely points to the fact that he denied the claims that C.P. made against him, and noted that Schuster "did not see any naked pictures of C.P. on [his] computer," and that "[i]f Browning knew he had naked or semi-naked pictures of C.P., common sense dictates he would not allow [Schuster] to have access to his computer." Browning's argument, however, ignores our standard of review, which requires this Court to disregard any evidence and inferences contrary to the verdict. *Belton*, 153 S.W.3d at 309.

■ Here, overwhelming evidence established Browning committed abuse of a child. C.P. testified that Browning ordered her to pull up her shirt and show him her breasts. She stated that she complied with Browning's request—lifting up her shirt and exposing her breasts. C.P. also testified that Browning then recorded a video and photographed her exposing her breasts with his cell phone. Additionally, a photograph and video of C.P.'s breasts were found on Browning's computer. Further, Cordia testified that the photograph and video were not taken at the same time. Browning admitted taking a picture of C.P. for "disciplinary purposes," but never made a disciplinary report about the matter. In viewing the evidence, and all reasonable inferences therefrom in the light most favorable to the verdict, we find sufficient evidence to permit a reasonable juror to find beyond a reasonable doubt that Browning committed the crime of abuse of a child. *See Belton*, 153 S.W.3d 307 at 309.

Browning also specifically alleges there was "absolutely no evidence that [he] had any intent to stimulate his own sexual gratification by photographing C.P.'s breasts." Browning incorrectly argues that the purpose of *his* gratification was a necessary element of the crime charged. The statute, however, only requires it be "for the purpose of sexual stimulation or gratification of *any individual* who may view such depiction." § 568.060.2 (emphasis added). Nevertheless, even if Browning's argument could be construed as alleging there was insufficient evidence his conduct was engaged in for the purpose of gratifying *any* person, his claim would fail. In sexual crimes, intent is derived from a defendant's mental state and is usually inferred from circumstantial evidence. *State v. Gaines*, 316 S.W.3d 440, 456 (Mo. App. W.D.2010). The language requiring the purpose be for sexual gratification is meant to exclude innocent behavior from being deemed criminal conduct. *See id.* at 456. "In assessing this intent, a fact-finder looks at the circumstances of the particular case." *Id.*

Here, Browning specifically requested that C.P. pull up her shirt and expose her breasts. Both the photograph and video, which were shot at different times, focus on C.P.'s breasts. Browning then forwarded the photograph and video to his personal computer, where they were accessed at least once. Such conduct indicates that Browning's intent was not innocent. There was sufficient evidence from which the jury could have found beyond a reasonable doubt that Browning's conduct was for the purpose of sexual gratification.

As such, we find sufficient evidence supported Browning's abuse-of-a-child conviction. Point III is denied.

### Points I and II: Sufficient Evidence for Invasion–of–Privacy Convictions

Browning also claims the trial court erred in overruling Browning's motion of

acquittal at the close of all the evidence because there was insufficient evidence to prove beyond a reasonable doubt that Browning knowingly used a concealed camera to secretly videotape K.T. and H.M.[4]

### Standard of Review

We apply the same standard of review as set forth above.

### Analysis

Section 565.253.1(1)[5] provides that a person commits the crime of second-degree invasion of privacy if such person "knowingly views, photographs or films another person, without that person's knowledge and consent, while the person being viewed, photographed or filmed is in a state of full or partial nudity and is in a place where one would have a reasonable expectation of privacy[.]" Pursuant to section 565.250(1), "[f]ull or partial nudity" is defined as "the showing of all or any part of the human genitals or pubic area or buttock, or any part of the nipple of the breast of any female person, with less than a fully opaque covering." Under section 565.250(3), a "[p]lace where a person would have a reasonable expectation of privacy" is defined as "any place where a reasonable person would believe that a person could disrobe in privacy, without being concerned that the person's undressing was being viewed, photographed or filmed by another[.]"

Browning appears to only contest the sufficiency of evidence as to his mental state; that is, he did not *knowingly* videotape K.T. and H.M. in such circumstances.

Browning contends his intent was to catch on tape people stealing movies, not K.T. and H.M. using his bathroom.

██ "Knowingly" is not specifically defined within the confines of section 565.253. "Knowingly," however, is defined as follows in the Criminal Code:

A person **"acts knowingly"**, or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

§ 556.061(16) (citing § 562.016.3). "Direct proof that a person acted 'knowingly' is often unavailable and is usually inferred from evidence of the circumstances surrounding the incident." *State v. Fackrell*, 277 S.W.3d 859, 863–64 (Mo.App. S.D. 2009).

██ In this case, Browning himself admitted to setting up the hidden camera in his *bathroom*. The video showed Browning setting up the camera across from the toilet, directing the camera at the toilet, and closing the closet doors such that only the direct area around the toilet would be captured on video. Further, K.T. testified that she often went over to Browning's house to borrow videos, and she recalled that on the day she was videotaped, she and H.M. first went to where Browning was working on a trailer next door and asked him about borrowing some movies. Although Browning testified that he set up

---

4. In Browning's Points I and II, he essentially sets forth the same argument except that Point I argues the State failed to put forth evidence that Browning knowingly used a concealed camera to videotape K.T., and Point II alleges the same with respect to H.M.

Accordingly, we address these points together.

5. This offense is a misdemeanor, unless more than one person is filmed in full or partial nudity during the same course of conduct, in which case it becomes a felony. § 565.252.2.

the camera to try and catch some guys who were allegedly stealing his movies, the jury was not required to believe his testimony. *Cannafax*, 344 S.W.3d at 284. The evidence permitted a reasonable juror to find beyond a reasonable doubt that Browning acted knowingly. Points I and II are denied.

### Point IV: Statute Not Unconstitutionally Vague

■ Finally, Browning contends section 565.253 is unconstitutionally void as being vague and overbroad because as written and as applied, the plain meaning of the statute criminalizes routine and everyday conduct. Browning concedes he failed to raise this issue at trial and in his motion for a new trial and requests plain error review. Where a point is not properly preserved, plain-error review is discretionary when manifest injustice or miscarriage of justice has resulted. Rule 30.20. A review of the record and argument indicate no manifest injustice or miscarriage of justice has occurred.[6] Point IV is denied.

The judgment of the trial court is affirmed.

BARNEY and SCOTT, JJ., concur.

---

6. Browning's argument fails to consider key parts of section 565.253, including the phrase "place where one would have a reasonable expectation of privacy[,]" which is defined as "any place where a reasonable person would believe that a person could disrobe in privacy, without being concerned that the person's undressing was being viewed, photographed or filmed by another[.]" § 565.250(3). As a result of this and other oversights, Browning's claim is largely nonsensical. For example, Browning absurdly compares his act of secretly videotaping persons using a toilet (clearly a place with a reasonable expectation of privacy) with a store owner videotaping patrons inside a store to prevent shoplifting.