Paul Cl Wilson, Judge,
dissenting
I agree with the result reached in the dissenting opinion but write separately because, both the dissenting opinion and the principal opinion apply the wrong standard of review.[1] This error is all too common when a criminal defendant raises a claim for the first time in a motion for a new trial. This Court’s rules of criminal procedure are clear in such circumstances, but the confusion results because appellate courts often misidentify which claim was preserved for appellate review.
Parties do not commit error, only the trial court can do so. So, if the defense timely objects to the prosecutor’s misconduct in closing argument and the trial court denies that'objection (or sustains it but refuses to grant the relief requested), the defendant can claim in the motion for new trial' that the trial court erred in overruling the objection or failing to grant the requested relief. If the trial court disagrees, Rule 29.11(d) provides that the defendant has preserved this claim for appellate review. What claim? The defendant’s claim that the trial court erred by overruling the objection (or failing to grant the relief requested) during closing argument.
But consider what happens when, as here, defense counsel does not raise a timely objection during closing argument. Obviously, Walter could not move for a new trial on the ground that the trial court erred by overruling an objection defense counsel never made or by failing to grant relief defense counsel never requested. Therefore, the only claim that Walter could (and did) raise in his motion for new trial is the claim that the trial court should grant a new trial because it “plainly erred” under Rule 29.12(b)[2] when it failed to interject itself sua sponte into the closing argument to admonish the state'or grant a *129 mistrial on the basis of a slide that Walter concedes the trial court did not see and to which Walter’s counsel did not object.
Rule 29.12(b) gives the trial court discretion to grant or deny such a “plain error” claim and, if it is denied, Rule 29.11(d) provides that this claim is preserved for appellate review. But, as above, the important question is what claim is preserved. The only claim Walter has preserved for appellate review is the only claim he raised, i.e., that the trial' court erred by not. granting a new trial after it failed to interject itself sua sponte into the state’s closing argument and admonish the prosecution or grant a mistrial on the basis of a slide the trial court did not see. Because Rule 29.12(b) gives the trial court discretion in deciding such claims, ah appellate court may only review Walter’s claim for an abuse of that discretion.
Accordingly, .the proper standard of review for Walter’s claim is not the plain error analysis available to trial courts under Rule 29.12(b) when a defendant raises a claim for the first time in the motion for new trial. Nor is it the plain error analysis available to appellate courts under Rule 30.20 when a defendant fails to brief (or properly brief) a claim of error (preserved or not) that affected substantial rights and resulted in manifest injustice - or a miscarriage of justice.[3] Instead, the proper standard of review in this case — and in- any case where the defense properly briefs a claim of error that was raised for the first time in the motion for new trial — is abuse of - discretion because Rule 29.12(b) gives the trial court discretion to grant or deny such claims. Here, given the overwhelming weight of the evidence against Walter, I would hold that the trial court did not abuse this discretion when it denied Walter relief on his plain error claim.
Mary R. Russell, Judge, dissenting
I respectfully dissent. Although I agree thht the prosecutor’s use of the altered photograph during closing arguments was likely improper, under our applicable standard of review for plain error, such conduct amounts to reversible error only if it is established that it had a decisive effect on the jury’s verdict and -substantially affected Defendant’s rights, resulting in a manifest injustice. In light of the overwhelming- evidence of Defendant’s guilt and the trial court’s superior position from which to judge any possible prejudice from the prosecutor’s conduct, I would hold that no such showing has been made, and, consequently, I would affirm the decision of the trial court.

Factual Background.

Because the alleged error must be considered in the context of the entire record, a- more complete discussion of the facts adduced at trial is necessary. .
The record shows that Defendant arid his girlfriend; went on a shopping spree purchasing the items used in the manufacture of' methamphetamine; They first went to Walmart, where-they purchased *130 lithium batteries. Next they went to a Red Cross pharmacy, where Defendant individually purchased pseudoephedrine pills. Once he, completed his purchase, his girlfriend separately bought pseudoephed-rine pills at the same Red Cross. They then returned to Walmart, where they purchased more pseudoephedrine pills. After that, his girlfriend entered a different Red Cross and purchased more pseu-doephedrine pills. The couple returned once more to Walmart, where his girlfriend bought Coleman camp fuel.
Later that same day, an individual named Shane Nicholson was arrested after being stopped for a; traffic violation. While in custody at the Saline County Sheriffs Office, Nicholson received a text message that identified the ■■■ sender as “Chad,” which is an abbreviation of Defendant’s first name. Later Nicholson’s telephone rang, and he put the telephone on speaker so that the officer could hear the conversation. The officer, who had encountered Defendant on previous occasions, identified Defendant as the caller. Nicholson asked the caller “if it was fire,” and Defendant replied “yeah.” In the context of methamphetamine use, “fire” means excellent methamphetamine.
Officers conducted a search of Defendant’s residence pursuant to a warrant in the early morning hours the next day. When the police entered the residence, .Defendant was in the basement. Officers found a number of items in- the basement that are used in the production and consumption of methamphetamine, including: salt,'lithium batteries, two quarts of acetone, starting fluid, Liquid Firé, a propane torch, and a metal spoon with a powdery residue. In another part of the .basement, officers also found a plastic bag containing a white powdery 'substance in a bourbon container, a jug with a strong chemical odor, and a Walmart card with white powder residue on it, which was sitting next to a razor blade and another plastic bag also coated in white powder residue.
The residence also contained an outdoor wood-burning stove, where officers found burnt lithium batteries, burnt packaging for pseudoephedrine pills, a burnt acetone container, a burnt Coleman fuel container, and burnt syringes.
A strong chemical smell emanated from the detached garage. Officers found that the smell was coming from the engine compartment of Defendant’s truck, which he and his girlfriend drove to make their purchases the previous day. Under the hood of the truck, officers found an active methamphetamine lab, including chemicals undergoing the process of manufacturing methamphetamine and a large red mixing bowl containing samples of methamphetamine. When shown the contents of the red mixing bowl, Defendant voluntarily exclaimed, “this is f* * *ing bullshit, someone set me up, you set me up.” All of the pseudoephedrine purchased by him and his girlfriend the previous day, including the pseudoephedrine that he purchased individually, was found to have been used in the attempt to make methamphetamine at .his residence.
During trial, Defendant’s mother testified that he had a history of allergies and chronic sinus infections. His girlfriend testified that, although she had made her purchases with the intent to manufacture ■methamphetamine, Defendant did not know about her plan, that he had purchased pseudoephedrine only because he was suffering from a sinus infection or allergies that day, and that he did not know about or participate in the attempt to make methamphetamine at his residence. She admitted, however, that she had previously told her parole officer that they both purchased the pseudoephedrine pills for *131 the purpose of producing methamphetamine.
The booking records from Defendant’s arrest for methamphetamine production reflected that he did not have any medical condition that required the treatment of pseudoephedrine pills. During his booking, he was asked whether he: (1) had a fever on that night; (2) had a history of allergies; (3) had a history of asthma or hay fever; (4) had recently had a cough; (5) currently had a sore throat, a cough, or a runny nose; and (6) had a history of any other medical conditions. He responded in the negative to all of these questions.

Standard of Review

Both parties agree that the prosecutor’s improper use of the photograph was not preserved for appeal because Defendant failed to object during the state’s closing argument. Consequently, his claim is reviewable, if at all, only for plain error.[1] Rule 30.20. As a result of Defendant’s request for plain error review, this Court then engages in a two-step process to determine if plain error exists. State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009), First, the Court determines whether the claim of error facially establishes substantial grounds for believing that a manifest injustice or miscarriage of justice has resulted. Id. All prejudicial error does not constitute plain error, however. Id. Plain error must be evident, obvious, and clear. Id. Second, if there is plain error under the first step, the Court must determine “whether the claimed error resulted in manifest injustice or a miscarriage of justice.” Id. at 607-08. Manifest injustice is a. higher standard than prejudice. Deck v. State, 68 S.W.3d 418, 424 (Mo. banc 2002). On plain error review, the appellant must show that the error affected his or her rights so substantially that a miscarriage of justice.or manifest injustice will occur if the" error is left uncorrected. Id.
Plain error relief is rarely granted for a closing argument' claim because withholding an objection to an improper argument is often a strategic decisión made by counsel. State v. Johnson, 284 S.W.3d 561, 573 (Mo. banc.2009). This Court examines closing arguments in the context of the entire record. State v. Anderson, 306 S.W.3d 529, 543 (Mo. banc 2010). Plain error in closing arguments is grounds for reversal of a conviction only when it is established'that the argument had a decisive effect on the outcome of the trial and amounts to'a manifest injustice. State v. Edwards, 116 S.W.3d 511, 536-37 (Mo. banc 2003). Overwhelming evidence of guilt may lead’ an appellate court to find that a defendant was not prejudiced by trial court error. State v. Davis, 318 S.W.3d 618, 642 (Mo. banc 2010). The defendant carries the burden of proving decisive effect. Anderson, 306 S.W.3d at 543.

Discussion

Defendant fails to prove that the prosecutor’s use of the altered photograph dur *132 ing closing arguments had a decisive effect on the outcome of the trial and substantially affected Defendant’s rights resulting in a manifest injustice in light of.-the -overwhelming evidence of his guilt. The- photograph shown by the prosecutor was not a ■ full body shot of Defendant in what the majority terms “a bright orange jumpsuit,” but rather depicted him only from the shoulders up,- wearing a -reddish-orange, collarless V-neck top.[2] The photograph did not signal to a layperson .that the individual was clothed in prison garb. In fact, the mugshot taken here at booking is indistinguishable from the typical mugshot, in which the accused stands against a height chart wearing the clothes he. or she had on at the time of the arrest. Such photographs are part of the standard booking process after an arrest and are not evidence of an accused’s guilt. Although showing a color mugshot of a defendant with the word “GUILTY”, stamped across it in bold red letters may disparage the presumption of innocence and impair a fan-trial, it does not rise to the level of .the constitutional violation found in Deck v. Missouri, , 544 U.S. 622, 630, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005).[3]
Further, the prosecutor’s conduct here did not affect Defendant’s substantial rights or cause a manifest injustice because the prosecutor was allowed to give his personal opinion that, based on facts in evidence, the Defendant was guilty. State v. Moore, 428 S.W.2d 563, 565 (Mo.1968). In this case, the prosecutor first properly offered into evidence the mugshot unaltered, .stating “that is simply not the face of someone who’s suffering from a. major sinus infection.” The prosecutor was allowed to show the Defendant’s mugshot because it had already been admitted into evidence. State v. Walker, 616 S.W.2d 89, 94 (Mo.App.1981) (noting that mugshots are . considered neutral and do not indicate prior criminal activity). The prosecutor’s click of a button in the PowerPoint slidesh-ow that added the word “GUILTY” over Defendant’s mugshot is- simply a combination of these permitted actions.
. The State has wide latitude during closing arguments, but a prosecutor must not go beyond the evidence presented, misrepresent the evidence or the law, or introduce irrelevant prejudicial matters. State v. Deck, 303 S.W.3d 527, 543 (Mo. banc 2010). As a quasi-judicial officer representing the State, a prosecuting attorney has a duty “not to convict at any cost but to see that justice is done and that the accused receives a fair and impartial trial.” State ex rel. Jackson Cnty. Prosecuting Attorney v. Prokes, 363 S.W.3d 71, 85 (Mo.App.2011).
The prosecutor’s act of digitally imposing the word “GUILTY” across the PowerPoint mugshot of Defendant was disrespectful of Defendant’s presumption of innocence, and such conduct should not be condoned. However, it is difficult to *133 see how this alleged miseonduet could have misled the jury. No juror, upon seeing the altered photograph in the context of the prosecutor’s closing argument, would have believed that the Defendant had been found guilty in a prior trial or that he had committed other crimes. Even assuming the prosecutor’s argument was improper, under the plain error standard of review, Defendant has the burden of proving that the state’s improper use of the altered mugshot had a decisive effect on the outcome of the trial and affected his rights so substantially that a manifest injustice will occur if left uncorrected. State v. Parker, 856 S.W.2d 331, 332-33 (Mo. banc 1993). In light of the overwhelming evidence of his guilt, Defendant has not shown that the altered photograph decisively affected the jury’s verdict or substantially affected his rights such that a manifest injustice resulted.
Taken as a whole, the evidence shows that Defendant and his girlfriend went shopping for’ ingredients used to make methamphetamine and that they did so in a suspicious, piecemeal manner. These ingredients, including the pseudoephed-rine that he bought individually, were then used in an attempt to manufacture methamphetamine at his residence later that night. During their search of the residence, officers found a plethora of materials used in the making of methamphetamine as well as an active methamphetamine lab set up under the hood of Defendant’s truck, which he had been driving mere hours before. When confronted with the red mixing bowl taken from his garage, Defendant responded immediately and defensively that he had been “set up,” which indicates that he knew the bowl contained methamphetamine.
During booking procedures later that night, Defendant stated that he was not suffering from fever, allergies, asthma, hay fever, sore throat, cough, of runny nose. This directly contradicts his girlfriend’s trial testimony that, while she intended to make methamphetamine with her purchases, Defendant was unaware of- that intent and bought his pseudoephedrine only for the legitimate purpose of treating allergies or a sinus infection. Also diminishing the credibility of her testimony is the fact that he was present with her during many of her purchases, and that she told her parole officer that they both purchased pseudoephedrine with the intent to make methamphetamine.
The State’s evidence did not have to go uncontested to amount to overwhelming evidence of guilt. Defense counsel’s contentions that Defendant had no knowledge of, and did not participate in, the attempt to make methamphetamine at his own residence with ingredients he himself purchased one day prior, was simply incredible, and obviously not believed by the jury.[4] When the evidence of guilt was overwhelming, there is certainly no way to conclude that, without the alleged misconduct, the outcome of the trial would have been, or even reasonably might have been, different. There is no rational reason why the jury would have let this alleged misconduct affect its decision, especially in light of the-overwhelming evidence against Defendant. The altered mugshot could not have had a decisive effect on the outcome of this case and did not substantially affect Defendant’s rights resulting in a manifest injustice. While I recognize the *134 importance of reminding state actors of their duty to see that the accused receives a fair and impartial trial, this Court should remand for a new trial only when necessary to correct a manifest injustice to the Defendant, and not to teach a lesson to the state. I find no such injustice here. Our dockets are too crowded, and the jurors’ time is too valuable, to be used so cavalierly by this Court.
i would affirm the decision of the trial court.[5]
Attachment
[[Image here]]

. Rule 29.12(b) is directed at trial courts, not appellate courts, and it gives trial courts discretion to grant relief on a claim of plain error in a motion for new trial if: (a) the error affected "substantial rights,” and (b) the court finds that a "manifest injustice or miscarriage of justice” .would occur if relief is not granted. .On the. other hand, Rule 30.20 applies to "plain error” in appellate courts. It allows appellate courts to grant relief on the basis of claims that were not briefed — or were not properly briefed — if a plain error affected the defendant’s substantial rights and a manifest injustice or miscarriage of justice woydd result if relief is not granted.

. This case does not present the question of whether an appellate court may review for plain error a claim that the defendant did not raise during trial or in the motion for a new trial. Rule 84.13(c) expressly allows for- such review in civil cases, see Rule 84.13(c) (plain errors may be considered “though not raised or preserved”), but Rule 30.20 contains no ■ such language. By giving, effect to this difference and not reviewing such claims on direct appeal even for plain error, counsel’s failure to raise or preserve the claim can be challenged under Rule 29.15. That is the préfera-ble approach because, in the post-conviction context, the motion' and appellate courts will have the benefit of counsel’s explanation rather than having to guess whether the failure to raise or preserve the error was the result of incompetence or trial strategy.

. Even, though Defendant apparently became aware of the photograph while the jury was deliberating, he waited until after the jury returned its verdict to raise the issue with the trial court. Such conduct raises the possibility that Defendant held back his objection until he saw what the.jury’s verdict would be. "To convict a trial court of an error, not put forth by the defendant (e.g., failure to declare a mistrial sua sponte), allows an accused to stand mute when incidents unfavorable to him or her occur during trial, gamble on the verdict, and' then - seek favorable results on appeal. This puts coiirts in an untenable posi- ' tion, and it is contrary to the principle of law that an appellate court will not convict a trial court of an error not put'before it to decide.” State v. White, 291 S.W.3d 354, 359 (Mo.App.2009) (internal citations omitted).

. The altered mugshot as shown to the jury is attached to this opinion.

. Compare Deck, 544 U.S. at 629-31, 125 S.Ct. 2007 (an accused’s due process rights are violated when he or she is required to appear in court wearing shackles without a trial court determination that the shackles are justified by circumstances specific to the. accused's case), with Estelle v. Williams, 425 U.S. 501, 512-13, 96 S.Ct, 1691, 48 L.Ed.2d 126 (1976) (absent an objection by defense counsel, an accused’s appearance in identifiable prison garb did not establish a constitutional violation because there was no evidence that the state compelled him to appear in that mahner of dress), and State v. Harris, 868 S.W.2d 203, 208 (Mo.App.1994) (no manifest injustice resulted when , an accused appeared in court wearing prison clothing because, without an objection, nothing in the record indicated that.,the trial court compelled him to do so).

. Evidence is reviewed in the light most favorable to the verdict. State v. Taylor, 298 S.W.3d 482, 491 (Mo. banc 2009).

. I would affirm all other points raised by Defendant on appeal.